W. S. PEEBLES AND LUTIE PATTON PRYOR, ADMINISTRATORS, ESTATE OF LUKE PRYOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9380.   Decided November 9, 1926.

Value of gross estate determined.

*E. W. Godbey, Esq.*, for the petitioners.
*Ward Loveless, Esq.*, for the respondent.

This is a proceeding for the redetermination of a deficiency in estate tax in the amount of $277.60. Questions at issue are: (1) Did the Commissioner in determining the deficiency include in the value of the gross estate a homestead exemption of $2,000? (2) Was the amount of $7,458.89, representing rents, correctly included in the value of the gross estate?

### FINDINGS OF FACT.

The decedent, Luke Pryor, died intestate on September 30, 1923, leaving real and personal property in excess of $50,000. Part of the property consisted of a large plantation in Limestone County, Ala., the value of which, as reported in the Federal estate-tax return, was $97,500.

The value of the gross estate, as first determined by the Commissioner in a letter addressed to the petitioners under date of April 22, 1925, was $259,616.67. This letter stated a deficiency in tax of $374.44. As a result of protests that the Commissioner had included in the value of the gross estate $2,000, representing a homestead exemption allowed by the statutes of Alabama, the Commissioner

reduced the value of the gross estate to $257,616.67, as shown by the deficiency letter of September 26, 1925, from which this appeal is taken. This letter shows a deficiency in estate tax of only $277.60.

The decedent's plantation was farmed in three ways: (1) By hired hands, (2) by share croppers, and (3) by tenants paying one-fourth of the cotton produced and one-third of the other crops raised.

At the date of decedent's death, September 30, 1923, the crops were largely ungathered and unmatured. Only a part of the cotton was ready for picking and no corn had been harvested or was fit for harvest. Prior to decedent's death, 27 bales of cotton of the average weight of 500 pounds each, and of the average value of 28 cents per pound, had been picked and ginned and, after having been ginned, had been hauled and deposited on the landlord's " grass-lot " near the mansion house. An additional bale raised by one tenant had been purchased and acquired by the decedent. The landlord's portion of the 1923 crops gathered up to the date of his decease is shown by the following:

|  | Value. | Landlord's portion. |
|---|---|---|
| ¼ tenants, 21 bales___ _____ | $2, 718. 58 | $679. 65 |
| ½ tenants, 6 bales___ _____ | 765. 59 | 382. 80 |
| ½ tenants, seed cotton_____ | 385. 00 | 192. 50 |
| Decedent's, 1 bale_____ | 147. 00 | 147. 00 |
| Total_____ | ------------ | 1, 401. 95 |

Included in the gross estate shown by the Federal estate-tax return was $7,458.89 for rents. The summary of rents is as follows:

Louis Poff, rent Oakland Place_____ $2, 989. 79
Tenant's rent, cotton, ¼_____ 3, 132. 44
Tenant's rent, corn, ⅓_____ 323. 25
Tenant's rent, hay_____ 30. 00
Tenant's rent, beans and peas_____ ------
Tenant's rent, cotton seed, ¼_____ 348. 46
Tenant's rent, seed cotton_____ 59. 04
Share croppers' cotton rents, ½ of ½_____ 750. 21
Share croppers' corn rents, ½ of ½_____ 29. 25
Share croppers' cotton seed, ½ of ½_____ 37. 53
Share croppers' hay, ½ of ½_____ ------
Share croppers' seed cotton, ½ of ½_____ ------

7, 699. 97
Less for poison, fertilizers, etc., furnished by owner_____ 241. 08

7, 458. 89

After the decedent's death the administrators completed the gathering and marketing of the crops. The tenant (Poff) of the Oakland Place, the most important single unit, proved contentious. As soon as possible after the rents matured (November first), the admin-

istrators sued out a sweeping attachment against his crops. The total yield of the entire section of land was less than $3,800 and was, according to the sheriff's inventory, as follows:

| | |
|---|---:|
| Cotton, 10,944 lbs | $3, 502. 08 |
| Corn, 9,890 lbs | 122. 17 |
| Hay, 6,585 lbs | 46. 79 |
| Cotton seed, 1,513 lbs | 31. 77 |
| | 3, 702. 81 |

The customary rental of one-fourth of the cotton and one-third of the other crops called for a rental of less than $1,000. The litigation was settled for $2,989.79, which is the amount listed above as rent for the Oakland Place.

OPINION.

SMITH: The petitioner alleges error on the part of the Commissioner with respect to the $2,000 homestead exemption. It is very evident, however, from the findings of fact, that the Commissioner has not included in the value of the gross estate shown in the deficiency letter the $2,000 homestead exemption.

The only other point in issue is whether there should be included in the value of the gross estate $97,500 as the value of the real estate, and in addition $7,458.89 for the landlord's portion of the 1923 crops, most of which were unmatured and ungathered at the date of his decease. The petitioners listed the rents received by the administrators in the estate-tax return, but it is their contention that they were listed only for the purpose of showing the income from the real estate; that they were fully taxed when the decedent's lands were assessed for estate-tax purposes as part and parcel of the land itself, and that it was error on the part of the Commissioner to add to the $97,500, reported as the value of the real estate, any amount representing the decedent's interest in the growing crops.

At the hearing of this appeal it was admitted by the petitioners that the value of the decedent's interest in the crops which had been severed, amounting to $1,401.95, was properly included by the Commissioner as a part of the gross estate.

Section 402 of the Revenue Act of 1921, under the provisions of which the estate-tax return was made, provides in part:

That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate.

Section 5841 of the Civil Code of Alabama, 1923, provides that:

Any crop commenced by a decedent may be completed and gathered by the executor or administrator, and, the expenses of the plantation being deducted therefrom, is assets in his hands, and may be sold by him at private sale, either in or out of the state.

The general rule of the common law is that growing crops, which are the product of annual sowing or planting, form a part of the real estate to which they are attached. *Chancellor* v. *Teel*, 141 Ala. 634; 37 So. 665. Growing and unharvested crops on the land of a decedent at the time of his death, such as are raised annually or periodically by labor and planting, go to the personal representatives as assets rather than to the heirs-at-law where the land is not specifically devised. *Marx* v. *Nelms*, 95 Ala. 304; 10 So. 551; *Mitcham* v. *Moore*, 73 Ala. 542.

In the instant case we are not concerned primarily with the question whether the growing crops at the date of the death of the decedent were realty or personalty. In either case the value of the decedent's interest in them must be included in the value of the gross estate.

With respect to the amount of rent reported as having been received from Louis Poff, with the explanation that it represented the amount of rent from the Oakland Place, i. e., $2,989.79, the findings of fact show that this amount was received as a compromise of litigation started by the administrators. It further appears that the total yield of the crops raised on the Oakland Place for 1923 was only $3,702.81. The decedent's rent, collectible as rent from Poff, was $947.72. How then can it be contended that the balance of the amount recovered from Poff, $2,042.07, represented the value of the interest of the decedent in the rents at the date of his death?

It is further to be noted that, under the statutes of Alabama, rents due from croppers for the year 1923 did not become due until November first. Civil Code, 1923, section 8800. The amount of the rents actually collected is no clear indication of the value of the interest of the decedent in the growing crops at the date of death.

From a consideration of the entire record, we are of the opinion that the value of the decedent's interest in the growing crops should have been and was included in the value of the real estate. That value should not be duplicated by adding to the $97,500 for the realty any amount for growing crops. We are of the opinion that only $1,401.95 of the $7,458.89 in question should be included in the value of the gross estate.

*Judgment will be entered on 15 days' notice, under Rule 50.*