BUTLER CONSOLIDATED COAL COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5344. Promulgated February 6, 1946.

*W. A. Seifert, Esq.*, *Sidney B. Gambill, Esq.*, and *A. G. Wallerstedt, C. P. A.*, for the petitioner.

*Richard L. Shook, Esq.*, for the respondent.

188

OPINION.

SMITH, *Judge*: The first question for consideration is whether the petitioner is entitled to deduct from its gross income of 1941 the full amount of the loss sustained by it from the sale of its Erico property. In its income tax return for 1941 the petitioner claimed the deduction of a loss of $110,694.94. The respondent has disallowed the deduction of $96,731.70 of this amount. The principal part of the loss is based upon the cost of the coal in place in the Erico property. The parties have stipulated that the investment of the petitioner in the coal in place on the property was $139,478.44 and that the depletion allowed and allowable with respect thereto was $53,234.48. The difference between these two amounts is $86,243.96. The respondent contends that this amount of the loss was sustained by the petitioner in 1930 when it abandoned mining operations on the property. The petitioner denies that it abandoned the coal in place or sustained any deductible loss in 1930. The facts show that the coal seam in the property was from only three to four feet thick; that mining operations from the vein were unprofitable due to the depressed condition of the industry in 1930; and that it could supply the demands of its customers for coal more economically from other mines operated by it. It therefore discontinued the mining operations. It removed much of the equipment from the mine. Some of this was stored in buildings at or near the property. We think that the evidence dis-

proves the contention of the respondent that the petitioner had abandoned the coal in place in the property in 1930.

The question then arises as to whether the loss, the amount of which is not in dispute, which was sustained by the petitioner from the sale of its Erico property in 1941 for $2,000 was a long term capital loss, as the respondent has determined, or an ordinary loss, as contended by the petitioner. Section 117 (a) (5) of the Internal Revenue Code defines the term "long-term capital loss" as follows:

* * * The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 18 months, if and to the extent such loss is taken into account in computing net income.

Subdivision (1) of section 117 (a) provides:

* * * The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1).

The petitioner contends that the "coal in place" in the Erico property was property held by the taxpayer "primarily for sale to customers in the ordinary course of its trade or business." The business of the petitioner was the mining and sale of coal—not the sale of coal which it had purchased from others, but the sale of coal which it produced itself. Coal in place is a part of the realty. It is a part of the realty as much as any fixtures on the property. The petitioner was not engaged in the business of selling real estate or "coal in place." We are of the opinion that the coal in place in the Erico property was not held by the petitioner "primarily for sale to customers in the ordinary course" of its trade or business. Cf. *Carroll* v. *Commissioner* (C. C. A., 5th Cir.), 70 Fed. (2d) 806.

There remains to be considered whether the Erico property was of a character "which is subject to the allowance for depreciation provided in section 23 (1)" of the code. The respondent has determined that the loss sustained by the petitioner from the sale of the Erico property was a long term capital loss. The petitioner has not shown or attempted to show that any part of the Erico property was subject to an allowance for depreciation. Upon the record made the contention of the respondent that the loss sustained from the sale of the Erico property was a long term capital loss is sustained.

The second question for consideration is the amount of "net operating loss carry-over" from the years 1939 and 1940 which the petitioner is permitted to deduct from the gross income of 1941 under article 121 of the Revenue Act of 1940. The respondent raises no question as to the right of the petitioner to deduct such net operating loss carry-over by reason of the fact that there was a reorganization or recapital-

ization of the petitioner in 1941. No new corporation resulted from the reorganization. During the period of receivership the returns were made by the receiver. The income tax return for 1941 was made by the officers of the corporation and covered the entire calendar year. The respondent determined that the petitioner sustained net operating losses for 1939 and 1940 of $12,216.29 and $44,152.29, respectively, and has allowed the deduction of the sum of the two amounts, namely, $56,368.58, from the gross income of 1941. The petitioner claims the deduction of a much larger amount. It makes these two contentions: (1) That the respondent erred in treating a loss sustained by it from the foreclosure of a mortgage on its "Argentine" property in 1940 as a long term capital loss rather than as an ordinary loss; and (2) that the respondent failed to allow the deduction from gross income of accrued interest upon its indebtedness for the years 1939 and 1940, although the petitioner filed returns on the accrual basis for all years.

The petitioner had owned the Argentine property for many years prior to 1940. It ceased mining coal from that property in 1931. The mine was partially dismantled. The mortgagee foreclosed its mortgage on the property in 1940 and the petitioner lost its investment therein. The petitioner makes the same contention with regard to the Argentine property as it makes with regard to the Erico property above referred to. In other words, it contends that the coal in place in the Argentine property was held primarily for sale to its customers in the ordinary course of its business and that when it lost that property it had an ordinary loss. The relevancy of the classification of this loss is due to the fact that section 122 (d) (4) of the Internal Revenue Code, as amended, provides that losses from sales or exchanges of capital assets may not be used in the computation of a net loss carry-over, except to the extent of net gains from sales or exchanges of capital assets within the same year. The petitioner makes no contention that it had any profit from a sale or exchange of a capital asset in 1940. The facts with regard to the loss on its Argentine property in 1940 are in all essential respects the same as those with reference to the claimed loss with respect to the sale of its Erico property in 1941. We hold that the respondent did not err in determining that the loss sustained by the petitioner in 1940 from the foreclosure of mortgage on the Argentine property was a long term capital loss which can not be availed of by it in computing the net loss carry-over.

We now consider the contention of the petitioner with regard to its claim that it is entitled to deduct from the gross income of the years 1940 and 1941 the amount of the accrued interest upon its interest-bearing obligations. The respondent contends that it is not entitled to the deduction, first, upon the ground that there was no probability that the interest would ever be paid and, second, upon the ground that, since the interest was not paid within two and one-half months after

the close of each taxable year, it is not a legal deduction from gross income under section 24 (c), Internal Revenue Code.

In *Zimmerman Steel Co.*, 45 B. T. A. 1041, we held that the taxpayer in receivership was not entitled to deduct interest which accrued upon its interest-bearing obligations because the financial condition of the taxpayer was such as to preclude any reasonable certainty that the interest would be paid in the normal course of business. Our decision in that case was reversed by the Circuit Court of Appeals for the Eighth Circuit, 130 Fed. (2d) 1011, the court saying:

* * * "there are no court decisions directly holding that an accrued item of expense may not be deducted when there is no reasonable expectancy that it will be paid." Our own search has confirmed the admission. The law is that if a method of bookkeeping employed by a taxpayer "does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income" (Section 41), and the real facts, not forms of entry, must measure the tax. But where interest actually accrues on a debt of a taxpayer in a tax year the statute plainly says he may deduct it. That he has no intention or expectation of paying it, but must go into bankruptcy as this taxpayer was obliged to do, can not of itself justify denial of deduction in computing the taxpayer's net income. * * *

In *Panhandle Refining Co.*, 45 B. T. A. 651, the taxpayer was a going concern engaged in the business of producing, refining, and marketing oil. Its parent company for many years had made advances to Panhandle on open accounts. At the end of the years involved, Panhandle had assets having a value of approximately $4,000,000. Its deficits were in excess of that amount. It owed its parent almost $6,000,000. We, nevertheless, held that the taxpayer was entitled to deduct accrued interest on its obligations. In *Zimmerman Steel Co.*, *supra*, we differentiated that case from *Panhandle Refining Co.*, *supra*, saying that the *Panhandle Refining Co.* case:

* * * involved the right to interest deductions for 1936 and 1937 by debtor taxpayer engaged in the oil business, payments in large amounts on the indebtedness had been made by taxpayer to its creditor each year from 1919 to the close of 1937, the creditor accrued the interest on its books as income, the condition of taxpayer's business was improving, its properties had doubled in value by 1936, increased in value in 1937, and at the time of hearing were in still better condition and of greater value, and its potential earnings were curtailed by proration or a limitation on production then in effect. As therein stated there was obviously no uncertainty as to payment. The case is therefore distinguishable.

In *Central Electric & Telephone Co.*, 47 B. T. A. 434, it was stated:

* * * It is a cardinal principle of bankruptcy law that secured claims are entitled, to the extent of the agreed interest accruing during the period of bankruptcy, to the earnings for that period from the pledged assets. The same applies to receiverships. *Rohrer* v. *Deatherage*, 168 N. E. 266; *In re Wakey*, 50 Fed. (2d) 869; *American Iron & Steel Mfg. Co.* v. *Seaboard Airline Railway Co.*, 233 U. S. 261; *Mortgage Loan Co.* v. *Livingston*, 45 Fed. (2d) 28; *Ticonic Bank* v. *Sprague*, 303 U. S. 406. The interest is entitled to the same priority as the principal; *Consolidated Rock Co.* v. *DuBois*, 312 U. S. 510; and the current earnings of the secured assets are applicable to the interest accruing upon the secured obligation. *Sexton* v. *Dreyfus*, 219 U. S. 339.

In I. T. 3635, Cumulative Bulletin, 1944, p. 101, the question propounded was whether interest which accrued during the years 1939 and 1940 on the obligations of a railroad which employed the accrual method of accounting was deductible. The financial condition of the railroad was such that there was no reasonable expectation that it would pay the accrued interest in full. The railroad filed a petition in 1935 under section 77 of the Bankruptcy Act pertaining to railroads, to be effective as of January 1, 1939. The old bonds were to be exchanged for securities with a smaller rate of interest. The I. T. holds that the interest would continue to accrue as a deduction until the date of the transfer of the corporate assets to the reorganized corporation, saying:

It is held that the interest on the obligations of the M Railroad Co. continues to accrue as a deduction until the date of the transfer of the corporate assets to the reorganized corporation, since (1) the obligation to pay interest runs until the debt is extinguished by the exchange of the obligations of the debtor corporation, for obligations of the reorganized corporation, and (2) the doubt as to the collectibility of such interest is not such a contingency as postpones the accrual of the liability until the contingency is resolved: Accordingly, the full amount of interest accrued on the M Railroad Co.'s obligations which were outstanding during the years 1939 and 1940 is allowable as a deduction for Federal income tax purposes for the respective years of accrual. The proposed plan of reorganization under which the obligations are to be replaced by new securities bearing reduced interest rates does not affect the accrual of interest, for Federal income tax purposes, for the years under consideration.

The facts in the case at bar are more like those which obtained in *Panhandle Refining Co., supra*, than in *Zimmerman Steel Co., supra*. Unquestionably, the petitioner was in a better financial condition in 1941 than in any prior year, although it owed a large amount of accrued interest upon its outstanding obligations. Its sales of coal in 1933 amounted to $752,877.87, in 1939 to $1,408,855.96, in 1940 to $1,649,480.45, in 1941 to $2,129,591.33, and in 1944 to $3,245,113.75.

Although the creditors of the petitioner corporation canceled the interest which was due them in consideration of receiving new obligations of the petitioner, we do not think that this has any material bearing upon the right of the petitioner to accrue interest upon its outstanding debt for the years 1939 and 1940. Those years stand by themselves. Practically all of the interest-bearing obligations of the petitioner in 1939 and 1940 were secured by mortgage. The payment of interest upon its mortgage indebtedness was as much an obligation of the petitioner as the payment of the principal. We see no reason for disallowing the deduction of any part of the interest which accrued upon its outstanding indebtedness unless it be that the petitioner is barred from the deduction of all or any part of it by reason of section 24 (c) of the Internal Revenue Code.

At the hearing of this proceeding the respondent contended that at least a part of the accrued interest was not deductible by reason of the fact that more than 50 percent of the outstanding stock of the peti-

tioner was owned by B. D. Phillips and his family. The evidence shows that during the years 1939 and 1940 B. D. Phillips and his family owned 4,728 out of 20,775 shares of the common stock of the petitioner outstanding and 13,680 out of 21,308 shares of preferred stock outstanding. Of the combined amounts of stock outstanding it is thus seen that B. D. Phillips and his family owned less than 50 percent of the total. It is to be noted, however, that section 24 (b) (1) (B) provides:

(B) Except in the case of distributions in liquidation, between an individual and a corporation more than 50 per centum in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual.

The question arises therefore as to whether B. D. Phillips and family owning more than 50 percent of the preferred stock and about 25 percent of the common stock had an ownership of more than 50 per centum in value of the total outstanding stock. The petitioner contends that it did not because both its common and preferred stock had no fair market value and, in fact, were worthless during 1939 and 1940. The balance sheets of the petitioner at the end of 1939 and 1940 would indicate that the stock was worthless for all practicable purposes. The transaction also by which A. C. Succop acquired a large amount of the common and preferred stock in 1937 upon a payment of only one dollar would indicate the worthlessness of the stock.

Section 24 (c) of the Internal Revenue Code provides as follows:

(c) UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued—

(1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof; and

(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).

The question as to whether the petitioner has proved that B. D. Phillips and family owned less than 50 percent "in value" of the outstanding stock of the petitioner during the years 1939 and 1940, when the stock was either worthless or had only a nominal value, is a dialectic one which, in the circumstances of this case, we do not find it necessary to decide. The respondent has determined that the petitioner had adjusted net income for 1941 of only $234,878.31. If the petitioner is entitled to deduct a carry-over loss from prior years exceeding that amount the petitioner will have no income tax liability for 1941.

The deduction of interest under section 23 (c), Internal Revenue Code, is not precluded from deduction by section 24 (c) when the

interest is owed to someone other than a member of the stockholder's family. The stipulated facts show that the accrued interest on the petitioner's obligations owed to others than B. D. Phillips and family amounted to $122,802 for 1939 and $121,762 for 1940. We hold that these amounts are legal deductions from gross income in determining the net loss carry-over for those years.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, *J.*, concurs only in the result.