## IRRGANG v. FAHS.
### No. 473 Orl. Civ.

United States District Court
S. D. Florida, Orlando Division.
Nov. 21, 1950.

R. F. Maguire (of Maguire, Voorhis & Wells), of Orlando, Fla., Douglas D. Felix (of Felix, Taylor & Kniskern), of Miami, Fla. and Chester B. Ferguson (of Macfarlane, Ferguson, Allison & Kelly), of Tampa, Fla., for plaintiff.

Fred J. Gilbert, Special Asst. to Atty. Gen., of the United States, and Matt O'-Brien, Asst. U. S. Dist. Atty., of Tampa, Fla., for defendant.

BARKER, District Judge.

The importance of the question decided necessitates an opinion in this case. The case was tried before the Court on the issues presented by the pleadings and testimony taken before the Court. The issue posed by the pleadings and proof for determination is the application of the Federal income tax law to a sale of a citrus grove which had been owned and held by the plaintiff for more than six months prior to the date of sale.

The proof shows that land upon which there was a bearing citrus grove, with an immature, unsevered crop of citrus fruit thereon, was sold by the plaintiff to a purchaser for the lump-sum consideration of $30,000.00. There was no reservation by the seller of the citrus fruit crop or any other right, title or interest in the premises sold. The sale was completed on June 27, 1945, the property conveyed by deed, and possession surrendered to the buyer on the same date. The plaintiff had an adjusted basis of $9,732.48 in said property at the time of sale, and incurred selling expense in the amount of $1,588.95, leaving her a gain from the transaction of $18,678.57.

The plaintiff reported the aforesaid sale of the citrus grove and the gain resulting therefrom in her income tax return for the year ending June 30, 1945. This gain was reported as a gain from the sale or exchange of a capital asset held for more than six months and tax paid thereon accord-ingly. In reviewing the plaintiff's income tax return for said taxable year, the Commissioner of Internal Revenue allocated $6,000.00 of the gain or purchase price realized from said sale and attributed it to the citrus fruit on the trees, and caused said amount to be taxed as ordinary income, and asserted a deficiency therefor in the amount of $2,390.09, together with interest thereon. The aggregate amount thereof was paid by the plaintiff to the defendant on July 7, 1949. On July 11, 1949, the plaintiff filed with the defendant a claim for refund of said income taxes and interest thereon so paid. Said claim was rejected and disallowed by the Commissioner of Internal Revenue on October 14, 1949, and this suit was instituted to recover said sum so paid with interest thereon.

The proof herein establishes that the plaintiff's business was that of a farmer engaged in the growing and selling of mature or ripe citrus fruit. The proof further establishes that the entire property here involved had been owned and held by the plaintiff for more than six months prior to the aforesaid date of sale and was used in her business of citrus farming. There was no separate sale of said citrus fruit made by the plaintiff and there was no actual or constructive severance of the same.

Consequently, the question for determination is whether or not the Commissioner had the right, under the Internal Revenue Code, to allocate, out of the purchase price of said property or the gain therefrom, the sum of $6,000.00 or any other amount of the sale price or the gain received by the plaintiff from the sale of her grove property, because the citrus grove property sold by the plaintiff had thereon a growing crop of citrus fruit, and classify and tax the amount so allocated as ordinary income. The plaintiff taxpayer contends that the entire lump-sum consideration involved in the sale was received for real property used in her trade or business and held for more than six months, no part of which was property of the kind properly includible in her inventory, if on hand at the end of her taxable year, or property held by her primarily for sale to customers in the ordi-

nary course of her trade or business, and that, therefore, all the gain from this sale should be considered as a gain from the sale of a capital asset held for more than six months and taxed accordingly.

The particular section of the Internal Revenue Code which must fit and apply to the pertinent facts in this case is Section 117(j), 26 U.S.C.A. § 117(j)[1].

■ If the aforesaid property sold, within the meaning of that statute, was "property used in the plaintiff's trade or business" and there was (as here) none of the losses enumerated in subparagraph (2) thereof, then the entire gain from the sale or exchange of the property must be considered and treated for income tax purposes as a gain from the sale or exchange of capital assets held for more than six months. By said statutory definition, the gain from the sale or exchange of all real property held for more than six months and used by the taxpayer in her trade or business, which is not properly includible in the plaintiff's inventory, if on hand at the close of her taxable year, and is not property held by the plaintiff taxpayer primarily for sale to her customers in the ordinary course of her trade or business, must be considered as a gain from the sale or exchange of a capital asset held for more than six months, and taxed accordingly.

The questions involved in this case may, therefore, be stated as follows:

(1) Was the entire property sold "property used in trade or business"?

(2) Was the entire property sold "real property"?

(3) Was the entire property sold "held for more than 6 months" before the sale?

(4) Was any of the property sold of the kind properly includible in taxpayer's inventory if on hand at the close of her taxable year?

(5) Was any of the property sold "held by the taxpayer primarily for sale to customers in the ordinary course of" her business?

We answer the questions in the order of their presentation.

1. This subsection reads in full as follows:

"Gains and losses from involuntary conversion and from the sale or exchange of certain property used in the trade or business

"(1) Definition of property used in the trade or business. For the purposes of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not

"(A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or

"(B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable.

"(2) General rule. If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For the purposes of this paragraph:

"(A) In determining under this paragraph whether gains exceed losses, the gains and losses described therein shall be included only if and to the extent taken into account in computing net income, except that subsections (b) and (d) shall not apply.

"(B) Losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion."

(1) Was the entire property sold "property used in the trade or business"?

The citrus grove property sold by the plaintiff consisted of land, and citrus trees upon which there was growing a citrus crop. The land and citrus trees were clearly "property used in the trade or business" of the plaintiff, within the meaning of said statute. The proof establishes that citrus fruit on a citrus tree is a part of the tree itself, the same as the leaves and branches. That this is true cannot be questioned. The tree itself is property used in business. It follows, therefore, that every part of the tree is likewise property used in business. The fruit on the tree being part and parcel of the tree is accordingly within the same classification. I, therefore, hold that the entire property sold was "property used in (taxpayer's) trade or business".

Was the entire property sold "real property"?

That the land and citrus trees on the grove property sold were real property has not been and cannot be questioned. The question, therefore, is narrowed to the fruit on the trees. The rule is that where a statute uses words and terms without specifically defining their meaning such words and terms are to be considered to have their ordinary or settled meaning. Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301.

That growing crops are generally realty and an integral part of the real estate to which they are attached has heretofore been recognized and applied in cases involving Federal taxation. See Parker v. Commissioner of Internal Revenue, 13 B. T.A. 1239, in which case it is said, at page 1243: "There can be no question to the general proposition of law that growing crops belong to the freehold, and in case of. sale of the same pass to the purchaser, provided the seller owns both the land and the crops, but a different rule obtains where the interests of tenants intervene. * * * Under similar conditions this Board held in Peebles v. C. I. R., 5 B.T.A. 386, that the landlord's interests in the growing crops of his tenants were realty, that their value was

properly included in the inventory made of the lands, and that it was error to classify them separately."

For comparative reasoning see also cases of Butler Consolidated Coal Co. v. Commissioner of Internal Revenue, 6 T.C. 183; Camp Manufacturing Company v. Commissioner of Internal Revenue, 3 T.C. 467; U. S. v. Robinson, 5 Cir., 129 F.2d 297, and Peebles v. Commissioner of Internal Revenue, 5 B.T.A. 386.

It is well settled that State law determines legal rights and when they become vested that the Federal law taxes such rights. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035; Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634. The law of Florida, in which the grove was situated and in which the sale took place, is as expressed by the Supreme Court of Florida in the case of Adams v. Adams, 158 Fla. 173, 28 So.2d 254, 255, wherein the Court ruled that citrus fruit growing on the trees (both mature and immature) is a part of the realty. In said case it was held that both the mature and immature citrus fruit on the trees in March, 1949, the date of the death of the testator, was real property which passed to the widow as a part of the homestead, rather than to the executor as personal property, under the laws of Florida. The Court there said: " * * * Crops unseparated from the tree or vine are a part of the real estate till separated and follow the latter unless in terms reserved by the seller. We find some exception to this rule, but it is the one generally approved throughout the country."

I, therefore, hold that, both in law and in fact, the citrus fruit on the grove was realty and that the entire property sold was "real property" within the meaning of the statute.

(3) Was the entire property sold "held for more than 6 months" before the sale?

■ The proof establishes that the grove property was owned and held by plaintiff at least from December 2, 1943, until its sale on June 27, 1945. The fruit was an integral part of the trees to which it was attached. The land and trees had been "held for more than 6 months". I must, therefore, hold that the entire property sold was "held for more than 6 months".

Incidentally, the proof also establishes that the immature citrus fruit on the trees on June 27, 1945, had its beginning more than six months prior to said date of sale. That established fact, however, is not necessary, in the opinion of this Court, to the decision in this case because the citrus fruit on the tree, whether mature or immature, is a part of the tree itself, the same as the leaves and branches, and even if the beginning of such fruit had been less than six months before the sale such immature and unsevered fruit would still be a part of the real property sold, and, therefore, the duration of the holding period of the trees, which themselves were real property, is the determining factor in applying the statute.

(4) Was any of the property sold of the kind properly includible in taxpayer's inventory if on hand at the close of her taxable year?

■ The evidence shows that the plaintiff was a farmer engaged in producing and selling ripe citrus fruit and that the citrus fruit on the trees was an integral part of the trees. The trees were property used in her business. They were not property of the kind includible in an inventory. Moreover, the plaintiff reported her income as a farmer on the cash receipts and disbursements basis and was accordingly not authorized to use an inventory in computing her taxable income. Furthermore, fruit on the tree is incapable of accurate counting and positive valuation. Plaintiff was accordingly precluded by the Internal Revenue Bureau's interpretation (I. T. 1368) from including her citrus fruit on the tree in an inventory. I, therefore, hold that none of the property sold was of a kind properly includible in taxpayer's inventory if on hand at the close of her taxable year.

(5) Was any of the property sold "held by the taxpayer, primarily for sale to customers in the ordinary course of" her business?

■ It is established by the evidence that the plaintiff was not engaged in the business of buying and selling citrus fruit groves. It was further established that the plaintiff was not engaged in the business of buying and selling citrus fruit, either with or without the grove. Plaintiff was not holding the citrus fruit on the trees for sale to customers either in the ordinary course of her business or in any business of buying and selling or producing and selling citrus groves with the fruit thereon. Her business consisted of holding land, citrus fruit trees and citrus fruit thereon for the purpose of growing such fruit to maturity and selling such mature fruit as a product separate from the grove. I, therefore, hold that the property sold was not held by the plaintiff primarily for sale to customers in the ordinary course of her business. I am fully supported in this conclusion by the case of Butler Consolidated Coal Company v. Commissioner of Internal Revenue, 6 T.C. 183, where the Court said: "The business of petitioner was the mining and sale of coal * * * not the sale of coal which it had purchased from others, but the sale of coal which it had produced itself. Coal in place is a part of the realty. It is a part of the realty as much as any fixture on the property. The petitioner was not engaged in the business of selling real estate or coal in place. We are of the opinion that the coal in place in the Erico property was not held by the petitioner primarily for sale to customers in the ordinary course of its trade or business." See also Camp Manufacturing Co. v. Commissioner of Internal Revenue, 3 T.C. 467; United States v. Robinson, 5 Cir., 129 F.2d 297; Peebles v. Commissioner of Internal Revenue, 5 B.T.A. 386; Parker v. Commissioner of Internal Revenue, 13 B.T.A. 1239.

■ Here the taxpayer sold herself out of business in one package for a lump-sum consideration. Certainly, under these

212

facts, it cannot be seriously contended that she made a separate sale of the citrus fruit on the trees or any of her other assets.

 The court is not bound to follow the provisions of the Treasury Department's rulings and regulations unless such are in conformity with the laws enacted by Congress. Commissioner of Internal Revenue v. Van Vorst, 9 Cir., 59 F.2d 677. In that case it was held, 59 F.2d text 679: "(1) It is well settled that department regulations may not invade the field of legislation but must be confined within the limits of congressional enactment. In International Ry. Co. v. Davidson, 257 U.S. 506, 514, 42 S.Ct. 179, 182, 66 L.Ed. 341, the court said: 'Section 161 does not confer upon the Secretary any legislative power. Morrill v. Jones, 106 U.S. 466, 1 S.Ct. 423, 27 L.Ed. 267; United States v. George, 228 U.S. 14, 33 S.Ct. 412, 57 L.Ed. 712. A regulation to be valid must be reasonable and must be consistent with law. * * *'"

Having applied the tests of the statute to the facts involved, it follows that the sale of the citrus grove with fruit on the trees was a single sale of real property held by the plaintiff for a period of more than six months and used in her trade or business of citrus farming, and such property sold did not include property of a kind properly includible in the plaintiff's inventory if on hand at the close of her taxable year, and did not include property held by the plaintiff primarily for sale to customers in the ordinary course of her trade or business. Her entire gain from the sale thereof must be considered as a gain from a sale of a capital asset held for more than six months, and taxed accordingly. Insofar as the Commissioner's Interpretation referred to as I.T. 3815 is opposed to this conclusion, it is contrary to law, invalid and unenforceable.

By reason of the probable cause for the action of the defendant or other officials of the Treasury Department, as found by the Court, the judgment to be entered herein, upon becoming final, shall be provided for and paid out of the proper appropriation from the Treasury of the United States.

Judgment will, therefore, be entered for the plaintiff.