## OWEN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13609.

United States Court of Appeals
Fifth Circuit.

Dec. 7, 1951.

James P. Hill, Jacksonville, Fla., for petitioner.

Hilbert P. Zarky, Special Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Special Asst. to Atty. Gen., Charles Oliphant, Chief Counsel Bur. Int. Rev., Charles E. Lowery, Special Atty. Bur. Int. Rev., Helen Goodner, Special Asst. to Atty. Gen., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES, and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This is a petition to review a decision of the Tax Court which sustained a deficiency assessment in income taxes for 1944, entered by the Commissioner of Internal Revenue against petitioner Louise Owen.

Petitioner and her husband were engaged in the business of growing and selling citrus fruits in Florida. They owned several groves. They followed the customary practice in Florida of agreeing to sell fruit while it was still on the trees and to some extent immature, the buyer paying a fixed price per box as the fruit is picked, the seller allowing the fruit to remain on the trees until maturity, as such fruit will not ripen, and has no commercial value, if picked before maturity. Moreover, the marketing of immature fruit is prohibited by law, both state and federal. Citrus fruit trees of the type here involved bloom in the Spring. The fruit matures between the following October and March, depending upon the variety of the fruit and type of tree.

On November 2, 1944, petitioner and her husband sold one grove, together with the crop on the trees and grove equipment, for $12,000. At the time of the sale, approximately 27% of the fruit on the trees was fully matured and ready for picking, having a market value of $710. The remaining fruit was immature, about one-half of it having reached 92.6% of maturity, the remainder 77.4% of maturity. The immature fruit had no commercial value at the time of sale, as it would not ripen if physically severed from the tree, but at maturity its commercial value would be approximately $2290.

On December 14, 1944, petitioner and her husband sold another grove, together with all fruit on the trees and grove equip-

ment, for $24,000. Approximately 63% of the fruit on the trees in this grove had reached full maturity, and was ready for picking, having a market value of $3465. The remaining fruit had reached 83.6% of maturity, having no commercial value at the time of sale, but at maturity its market value would be approximately $2035.

Each grove was sold for a lump sum consideration, there being no allocation of the purchase price as between land, trees, fruit, or grove equipment. The groves were conveyed by ordinary warranty deeds which described the land, the fruit passing as appurtenant to the freehold. None of the fruit had been separately sold prior to the sale of the groves, and there had been no severance, actual or constructive.

Petitioner. and her husband had owned these groves as husband and wife by the entireties for more than six months. They realized a substantial taxable gain on each sale. Petitioner returned her one-half of the profits on the sales as long term capital gains. The Commissioner disagreed. He regarded the raising of citrus fruit as a trade or business, and the unpicked fruit on the trees as property primarily held for sale in the ordinary course of that business. Pursuant to his interpretation of section 117(j) of the Internal Revenue Code (Income Tax Bulletin 3815), he held that profit on the sale of the land itself was a long term capital gain, but he allocated a separate value to the fruit, apart from the land and trees, on which he separately computed profits and taxed the same as ordinary business income, entering a deficiency assessment accordingly.

The sole question on this appeal is whether the gains derived from sale of the unsevered fruit should be separately taxed as ordinary business income, as the Commissioner and the Tax Court have held, or whether such fruit should be regarded as appurtenant to the freehold, and gains from the sale thereof taxed along with the land as a long term capital gain, as petitioner contends.

As in other problems of taxation, the approach here should be factual, not hypothetical. What was actually done, not what might have been done, is the guide. The Commissioner contends that if the taxpayer had sold the fruit on the trees to one customer, and the land to another, there could be no doubt that profits on the sale of the fruit would be separately taxable as ordinary business income, and that the tax result is not changed simply because one party purchased both the fruit and the land in one transaction. Were the facts as hypothesized by the Commissioner, an entirely different case would be presented. Different methods of handling the same transaction will often produce different tax results.

Here the land itself was sold, together with the trees and fruit, as they stood in their natural state. There was no severance of the fruit, either actual or constructive, and none contemplated. The whole was sold, *in solido*. The fact that the fruit was potentially property held for sale in the ordinary course of business, and for that purpose could have been severed and separately sold by the taxpayer, does not justify imposing a tax upon it in that status, when in fact no such transaction occurred. Taxation must follow the facts.

As the Internal Revenue Code does not define real property, the status of the fruit as realty or personalty is to be determined by the law of Florida. The Florida rule is that crops of fruit growing on trees, whether mature or immature, are in general a part of the realty until severed. Unless expressly reserved, the crop passes with the freehold when conveyed. It is also recognized that by the acts or intention of the owner, growing fruit may be constructively severed and thus converted into personalty for purposes of mortgage or sale, even though the fruit physically remains on the tree. Adams v. Adams, 158 Fla. 173, 28 So.2d 254; Simmons v. Williford, 60 Fla. 359, 53 So. 452. See also Parker v. Commissioner, 13 B.T.A. 1239; Peebles v. Commissioner, 5 B.T.A. 386; 25 C.J.S., Crops § 6, p. 7; 15 Am.Jur. 200. Compare Wood v. Wood, 116 Colo. 593, 183 P.2d 889, 172 A.L.R. 815

The Commissioner points to Florida decisions holding that where a crop mortgage is executed upon the fruit *alone*, the

fruit is regarded as personalty. Haines City Citrus Growers v. Petteway, 107 Fla. 344, 145 So. 183; Gentile Brothers v. Bryan, 101 Fla. 233, 133 So. 630. These cases are consistent with the general rule, however, upon the theory that execution of such a mortgage constitutes a constructive severance of the fruit for purposes of the mortgage lien. The latest pronouncement of the Florida Supreme Court on the subject is Adams v. Adams, 158 Fla. 173, 28 So.2d 254, decided December 3, 1946, in which it is held that unsevered fruit on the tree is part of the land and follows it upon conveyance, unless in terms reserved. The Florida Crop Lien Act, chap. 10279, Laws of Florida, Acts of 1925, F.S.A. § 700.01 et seq., also declares that crops on the tree or vine are a part of the real estate until severed.

Petitioner's ordinary business was selling citrus fruit as personalty, altogether severed from the realty. She was not in the business of selling groves. These were isolated transactions. While the fruit on petitioner's groves was intended to be eventually sold, it was not primarily held for sale until it became personal property by actual or constructive severance from the trees. While, as here, it was still in process of being grown, it was held only for a potential future sale. This unpicked fruit could not be included by petitioner in her inventory if on hand at the close of a taxable year. For all the reasons above stated it was not, at the time of these sales, property held *primarily* for sale in the *ordinary* course of her business. We repeat, there was no sale of the fruit as personalty severed from the freehold. The severance made by the Commissioner for tax purposes was purely an artificial one, which did not in fact occur. While on the trees and unsevered, the fruit was as much a capital asset as the trees and land. The fruit was as much a part of the trees as the leaves and branches. Irrgang v. Fahs, D.C.Fla., 94 F.Supp. 206; Cole v. Smith, D.C., 96 F. Supp. 745; Albright v. U. S., 8 Cir., 173 F.

2d 339; U. S. v. Bennett, 5 Cir., 186 F.2d 407; Carroll v. Commissioner, 5 Cir., 70 F. 2d 806; U. S. v. Robinson, 5 Cir., 129 F.2d 297. Compare Butler Coal Co. v. Commissioner, 6 T.C. 183; Parker v. Commissioner, 13 B.T.A. 1239, 1243; Peebles v. Commissioner, 5 B.T.A. 386.

The fact that the taxpayer deducted the expense of raising the crop does not defeat her right to have the profits on the unpicked fruit taxed as a capital gain as defined in section 117(j), I.R.C. Tax liability is based on net gain as defined by the statute, in determining which the fruit is included in the value of the land, so that the grove owner does not escape taxation, but pays a capital gains tax upon the net value of the land and fruit as contemplated by the statute.

On the law as it stood in 1944 when the tax liability in question arose, the deficiency assessment was erroneous, and should be set aside.[1]

Reversed

---

1. The controversy is governed by the law as it stood in 1944, long prior to the Revenue Act of 1951, approved October 20, 1951, section 323 of which amended section 117(j) of the Internal Revenue Code, 26 U.S.C.A. § 117(j), in the respect here under consideration.