**BIDART BROS., a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1742–ND.**

United States District Court
S. D. California, N. D.

Dec. 26, 1957.

Conron, Heard & James, Calvin H. Conron, Jr., Bakersfield, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., John G. Messer, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

JERTBERG, District Judge.

█ This action is for a refund of corporation income taxes paid for the fiscal year ending April 30, 1952, in the amount of $107,258.90 with interest thereon as provided by law.

Plaintiff corporation was lessee of several parcels of land which were used to grow a variety of crops such as hay, cotton, seed alfalfa, etcetera. The leased lands had been under lease to the plaintiff for a period in excess of six months at the time the question presented in this action arose.

During the fiscal year ending April 30, 1952, plaintiff sold its farm leases together with the unharvested crops on said lands at the same time and to the same person, to wit, Wheeler Farms, a partnership. Plaintiff also sold its harvested crops to said partnership at the same time.

In its Federal income tax return for said fiscal year plaintiff reported the sale of its leases and the unharvested crops as a single transaction and treated the entire gain from said sale as a long term capital gain.

Thereafter the Commissioner of Internal Revenue assessed a deficiency in the amount of $107,258.90 against the plaintiff. Said deficiency resulted from the Commissioner's disallowance of capital gain treatment on that portion of the gain resulting from the sale of the unharvested crop on the leased land.

Of the above sales, the sale of the harvested crop in the amount of $87,000 was reported as ordinary income. The gain on the sale of the farm leases, in the amount of $244,925.73 and the gain on the sale of the growing crops, in the amount of $237,954.56 were reported as gain from the sale of capital assets.

Ordinary income treatment on the sale of the harvested crop and capital gain treatment on the sale of the farm leases were accepted by the Commissioner of Internal Revenue as reported by plaintiff. However, capital gain treatment, under Section 117(j) (3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117 (j) (3), applied by plaintiff to the gain from the sale of the growing crop was disallowed, upon the ground that said gain from the sale of the growing crop upon the leased land must be treated as ordinary income.

The case came on for trial before the Court sitting without a jury on November 27, 1957. The plaintiff was represented by Conron, Heard and James, Calvin H. Conron, Jr. appearing. The defendant was represented by Laughlin E. Waters, United States Attorney, John G. Messer, Assistant United States Attorney, appearing.

The case was tried on a pre-trial order based upon a written stipulation of facts. The only question presented in this case is whether the taxpayer corporation, having sold long-term leases on land with growing crops thereon, at the same time and to the same person, is entitled to capital gain treatment on the gain realized from the sale of the growing crops under Section 117(j) (3) of the 1939 Internal Revenue Code.

Section 323 of the Internal Revenue Code of 1951 added paragraph 3 to subsection "j" of Section 117 of the 1939 Internal Revenue Code and was made applicable with respect to sales, exchanges and conversions occurring in taxable years beginning after December 31, 1950.

Said paragraph 3 provides as follows:

"Sale of land with unharvested crop. In the case of an unharvested crop on land used in the trade or business and held for more than 6 months, if the crop and the land are sold or exchanged (or compulsorily or involuntarily converted as de-

scribed in paragraph (2)) at the same time and to the same person, the crop shall be considered as 'property used in the trade or business.' "

After the amendment adding said paragraph 3, the Treasury Department promulgated a regulation which reads in part as follows:

"(a) In General

"(1) Section 117(j) provides that the recognized gains and losses, described below shall be treated as gains and losses from the sale or exchange of capital assets held for more than six months.

"(v) Gains and losses from the sale, exchange, or involuntary conversion in a taxable year beginning after December 31, 1950, of an unharvested crop under the conditions specified in (d) hereof.

"(d) Unharvested crops.—The conditions referred to in (a) (1) (v) above are: (1) the unharvested crop is on land which is 'section 117(j) property' as defined in (a) (3) above, and such land has been held for more than six months; (2) such crop and such land are sold, exchanged or converted at the same time and to the same person; (3) no right or option is retained by the taxpayer, at the time of the sale, exchange or conversion, to re-acquire, directly or indirectly, the land. The length of time for which the crop, as distinguished from the land, has been held is immaterial. A leasehold or estate for years is not 'land' for the purpose of this section." (Section 29.-117–7 of Regulations 111, as amended by Treasury Decision 5980, Cum. Bull. 1953–1, 65.)

Prior to said amendment adding paragraph 3, the policy of the Commissioner of Internal Revenue regarding tax treatment of sales of growing crops was to the effect that any gain realized from the sale of growing crops was ordinary income, regardless of their stage of development. (1946 Cum.Bull. 31) The Tax Court, in several decisions, sustained the views of the Commissioner. Watson v. Commissioner, 15 T.C. 800; with two judges dissenting; McCoy v. Commissioner, 15 T.C. 828; Owens v. Commissioner, P-H TC Memo, par. 50,300. There were decisions of the District Courts to the contrary. These conflicting decisions were called to the attention of Congress, culminating in the amendment adding paragraph 3.

Subsequent to the amendment, Owens v. Commissioner was reversed on appeal (5 Cir., 192 F.2d 1006); McCoy v. Commissioner was reversed on appeal (10 Cir., 192 F.2d 486) and Watson v. Commissioner was sustained on appeal (9 Cir., 197 F.2d 56). This conflict was resolved by the Supreme Court of the United States when the Watson decision was affirmed in 1953 (345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232). In the McCoy case, the Tenth Circuit held that the gain realized from the sale of land together with a wheat crop growing thereon was entitled to capital gain treatment. In the Owens case, the Fifth Circuit held that the gain from the sale of an orange grove with an unharvested crop growing thereon was entitled to capital gain treatment. In the Watson case, the Ninth Circuit held that the gain from the sale of an orange grove with a growing crop thereon was subject to segregation and that the proceeds attributable to the land were entitled to capital gain treatment, while the proceeds attributable to the crop must be reported as ordinary income.

There can be no question that if the corporate taxpayer had owned for more than 6 months the land upon which the crops were growing, and had sold the same together with the unharvested crops in the same manner that he sold the leases with the growing crops, the profits of such sale would have received capital gain treatment. In the instant case, the corporate taxpayer received capital gain treatment on that part of the proceeds of the sale realized from the sale of the leases. Such treatment appears to be proper. Sutliff v. Commissioner, 46 B.T.A. 446; Commissioner of

Internal Revenue v. Golonsky, 3 Cir., 200 F.2d 72, certiorari denied 345 U.S. 939, 73 S.Ct. 830, 97 L.Ed. 1366.

The plaintiff contends that the regulation of the Commissioner is contrary to the plain language of said paragraph 3, and contrary to Congressional intent. It is the position of the defendant that said paragraph 3 is clear and that the regulation is simply declaratory of the intent of Congress.

I have been unable to find any decision rendered by any United States court which considered the tax treatment which should be accorded to the gain realized from the sale of an unharvested crop which was growing on land held under lease or an estate for years, and in which a sale was made of the lease or estate for years together with the crop to the same purchaser in the same transaction.

■■ The problem, therefore, is to determine the meaning which Congress intended to give to the word "land" as it appears in paragraph 3. The regulation promulgated by the Treasury Department states that in using the word "land", Congress did not intend such meaning to cover "a leasehold or estate for years". Counsel for the plaintiff argues with great earnestness that Congress in enacting paragraph 3 was concerned only with land tenure or use, and not land ownership. It is to be noted that the words "land tenure", "land use", "use of land", "lease", "real property" or similar expressions do not appear in the statute. The critical phrase in the statute is "if the crop and the land are sold * * *". The word "land" is not defined in the Revenue Act. Generally speaking, the language of the Revenue Act, just as in any statute, is to be given its ordinary meaning. Helvering v. William Flaccus Oak Leather Co., 313 U.S. 247, 61 S.Ct. 878, 85 L.Ed. 1310. In the absence of a definition of a word in the Revenue Act, resort may be had to the definition contained in the law of the State in which the problem arises for the purpose of ascertaining the meaning of such word. Watson v. Commissioner, 345 U S. 544, 73 S.Ct. 848, 97 L.Ed. 1232.

The ordinary meaning of the word "land" and the definition of "land" under the law of the State of California are the same.

Webster's New International Dictionary, 2d edition, defines land as "the solid part of the surface of the earth as distinguished from water constituting a part of such surface". Black's Law Dictionary, 4th edition (1951) states that "Land, in the most general sense, comprehends any grounds, soil, or earth whatsoever; as meadows, pastures, woods, moors, waters, marshes, furzes and heath. Co. Litt. 4a". Section 659 of the California Civil Code states that "Land is the solid material of the earth, whatever may be the ingredients of which it is composed, whether soil, rock, or other substance".

The following citations from the State of California indicate that leases or estates for years do not come within the term "land": In Kreling v. Walsh, 77 Cal.App.2d 821, at page 832, 176 P.2d 965, at page 972 (rehearing denied by the Supreme Court) the Court said "The lease herein, being for a specified term of years, is a chattel real, is personal property, and consequently is not real property or real estate. Jeffers v. Easton, Eldridge & Co., 113 Cal. 345, 352, 45 P. 680; City of Santa Barbara v. Maher, 25 Cal.App.2d 325, 327, 77 P.2d 306. Leases for a definite term of years fall within the definition of personal property and are not governed by the rules applicable to real property."

The Supreme Court of California in the case of Dabney v. Edwards, 5 Cal.2d 1, 53 P.2d 962, 103 A.L.R. 822, stated that estates for years at common law were classified as chattels real and regarded as personal property. The Court further stated that such common law definition has been definitely maintained and endorsed by the courts of the State.

In Potts Drug Co. v. Benedict, 156 Cal. 322, 104 P. 432, 25 L.R.A.,N.S., 609, the subject of a transaction between the parties involved a lease for a term of years. The Court stated 156 Cal. at page 327, 104 P. at page 435: "Such estate, being

one for years, was not real property, but was a chattel real, and, under the law, must be regarded as having been part of the personal estate of plaintiff."

It is my view that the phrase "if the crop and the land are sold" clearly means the ownership of the land and does not mean "if the crop and the right to the use of land are sold", as urged by the plaintiff.

This meaning is not changed by the clause in the statute which reads "in the case of an unharvested crop on land used in the trade or business and held for more than 6 months". That clause is modified by the clause "if the crop and the land are sold".

Notwithstanding my belief that the language of the statute is clear, I have read the Senate Report 781 as it appears in the U. S. Code Congressional and Administrative Service, 82nd Congress, First Session, 1951, at pages 2017 and 2018. This report reads as follows:

"Sales of Land with Unharvested Crops. Section 117(j) of the code provides, in effect, that a net gain from sales of properties 'used in the trade or business' of a taxpayer, including 'real property' so used, if held more than 6 months is to be treated as a capital gain. In the case of a net loss, it is treated as an ordinary loss. Where unharvested crops are sold together with the land, or unripe fruit is sold together with the land and the trees, a difficult question has arisen as to the proper application of the present law to the unharvested crops or the unripe fruit.

"The Bureau of Internal Revenue has ruled that, whether or not such crops or fruit are regarded as a part of the real estate under local law, they constitute property held 'primarily for sale to customers in the ordinary course of his (the taxpayer's) trade or business' and thus, under the provisions of section 117(j), any gain on the sale of the unhar-

vested crops or unripe fruit is to be separately determined and treated as ordinary income instead of as a capital gain. In several decisions, the Tax Court, (with some members dissenting) has taken a similar view, but two district courts have held that such fruits or crops constitute 'property used in the trade or business' so that a gain from a sale of the land, trees, and fruit would be treated as a capital gain with the result that the entire gain from the sale of such property would constitute *ordinary income*.* (Emphasis added.)

"Your committee believes that sales of land together with growing crops or fruit are not such transactions as occur in the ordinary course of business and should thus result in capital gains rather than in ordinary income. Section 323 of the bill so provides.

"Your committee recognizes, however, that when a taxpayer keeps his accounts and makes his returns on the cash receipts and disbursements basis, the expenses of growing the unharvested crop or the unripe fruit will be deducted in full from ordinary income, while the entire proceeds from the sale of the crop, as such, will be viewed as a capital gain. Actually, of course, the true gain in such cases is the difference between that part of the selling price attributable to the crop or fruit and the expenses attributable to its production. Therefore, your committee's bill provides that no deduction shall be allowed which is attributable to the production of such crops or fruit, but that the deductions so disallowed shall be included in the basis of the property for the purpose of computing the capital gain.

"The provisions of this section are applicable to sales or other dispositions occurring in taxable years beginning after December 31, 1950."

---

* Apparently a clerical error.

The report of the Senate Committee was accepted by the House of Representatives in the Conference Report as follows:

"Amendment No. 63: This amendment provides rules for the application of section 117(j) in cases where land bearing an unharvested crop is sold. The provision applies in cases where the land has been held for more than 6 months. The period that the crop has been on the land is immaterial. The House recedes." U. S. Code Congressional and Administrative Service, 82nd Congress, First Session, 1951, page 2134.

The decisions under review by the Senate Committee were the three tax cases mentioned above and probably the District Court decisions in Cole v. Smythe, 96 F.Supp. 745, and Irrgang v. Fahs, 94 F.Supp. 206. In both of the District Court cases, one in Florida and the other in California, there was involved the sale of lands planted to citrus groves with growing crops thereon. Hence, all of the court decisions considered by the Senate Committee involved the sale of the ownership of lands with growing crops thereon at the time of the sale.

The references to the word "land" in the report appear in such expressions as "where land is sold" and "where land bearing an unharvested crop" and "when it [land] is sold if owned for more than 6 months as property with an unharvested crop on it."

I find nothing in the Committee Report which causes me to change my view as to the plain meaning of the statute.

I have also reviewed those parts of the Congressional debates which are quoted in the briefs of both counsel. It is true, as stated by counsel for the plaintiff, that there are statements by Senator Humphrey to the effect that if capital gain treatment is to be accorded to the sale of land with growing crops thereon, then it should be extended to the live stock people, to the turkey people, to the big farmer and the small farmer, and to the "dirt" farmer and to the "sidewalk" farmer, and to the rich farmer and the poor farmer. However, Congress was not persuaded and merely enacted paragraph 3 to cover the factual situations which brought the problem before Congress. It is my view that if Congress had given any attention to the sale of leases together with growing crops, it undoubtedly would have placed reasonable restrictions thereon such as limiting capital gain treatment on the growing crops to instances in which the leases contain a minimum term considerably in excess of 6 months, and in which the term of the lease would not expire for some realistically reasonable period after the sale.

Counsel for the plaintiff urges many cogent reasons why this plaintiff should receive the same tax treatment as the taxpayer who sells land with growing crops thereon. There is no question that the sale was made in good faith, that the leases had several years to run, and that the plaintiff was retiring from the farming business. It is clear that the sale was not made simply to obtain capital gain tax treatment on the growing crops. However, if inequities exist, such inequities must be corrected by Congress and not by judicial legislation.

■ Capital gain tax treatment is a matter of legislative grace and is not a matter of right, hence Congress can limit the property to which capital gain treatment will be extended. Polish Army Veterans Post 147 v. Commissioner, 3 Cir., 236 F.2d 509; McCoy v. Commissioner, 5 Cir., 192 F.2d 486.

For the reasons herein expressed, judgment must be in favor of the defendant and it is so ordered.

Counsel for the defendant is directed to prepare and lodge findings of fact, conclusions of law and form of judgment consistent with the views herein expressed.

The Clerk of this Court is directed to forthwith mail copies of this order and memorandum to all counsel.