[Sac. No. 3774. In Bank.—February 8, 1927.]

THE FIRST NATIONAL BANK OF OAKDALE, Appellant, v. E. E. BRASHEAR et al., Respondents.

[1] Chattel Mortgages—Leased Land—Surrender of Lease—When Mortgage not Lien on Crops.—Where a sublessee of agricultural land, during his occupancy of the land, executes a chattel mortgage upon the crops to be grown thereon, but after summer-fallowing the land surrenders his sublease without planting any crops, the mortgage does not attach to crops afterward planted by a new tenant.

[2] Id.—Crop Mortgage—Effect of.—While a crop mortgage may be made to cover crops thereafter to be sown and grown upon leased land, and such a mortgage has a potential existence during the period prior to the actual planting of the seed, such mortgage does not pass the point of potential existence prior to the actual planting of the land.

[3] Id.—Interest of Mortgagee—Lien.—The general rule is that the holder of a crop mortgage has no interest in nor lien upon the land, but the lien of such mortgage attaches only to the interest which the mortgagor may have in the crops after they have come into being by the planting of the seed wherefrom they are grown.

---

2. Validity of mortgage or agreement to mortgage crops to be planted, notes, 5 Ann. Cas. 400; 23 L. R. A. 449; L. R. A. 1917C, 8.

[4] Id.—Lease of Agricultural Land—Chattel Real—Husband and
Wife—Control of Husband.—A lease of agricultural land is a
chattel real with which the lessee has full power to deal so far as
his wife is concerned.

[5] Id.—Surrender of Lease—Failure of Wife to Join in—Aban-
donment.—Even if a written and recorded surrender of lease of
agricultural land executed by the lessee was void, because not
signed by the lessee's wife, where, after such written surrender,
both the lessee and his wife abandoned the leasehold premises and
the landlord immediately accepted such surrender and resumed pos-
session of the premises, all interest of the lessee thereupon termi-
nated, and with such termination of the lease all rights of the
mortgagee under a mortgage executed by such lessee and his wife
as to crops not yet planted came to an end.

---

(1) 11 **C. J.**, p. 505, n. 80.   (2) 11 **C. J.**, p. 444, n. 73, p. 505,
n. 82.   (3) 11 **C. J.**, p. 444, n. 74.   (4) 31 **C. J.**, p. 82, n. 63, p. 83,
n. 65, p. 120, n. 40, p. 125, n. 97; 36 **C. J.**, p. 690, n. 60 New.
(5) 11 **C. J.**, p. 505, n. 91 New.

APPEAL from a judgment of the Superior Court of
Stanislaus County. L. W. Fulkerth, Judge. Affirmed.

The facts are stated in the opinion of the court.

Griffin, Boone & Boone and Edward T. Taylor for Ap-
pellant.

T. B. Scott, W. H. Hatton, Vernon F. Gant and Thomas
M. Anaya for Respondents.

RICHARDS, J.—This appeal is prosecuted by the plain-
tiff in an action wherein the latter sought to foreclose a
chattel mortgage which had been executed to it by the
defendants E. E. Brashear and Marie Brashear on Octo-
ber 22, 1921, to secure a promissory note for the principal
sum of $6,300, also then executed, and which note provided
for interest and future advances. The mortgage in question
was in form a crop mortgage, by the terms of which the
Brashears mortgaged to the plaintiff the crops growing and
to be grown during a series of succeeding years upon a cer-
tain tract of land consisting of 1,000 acres which had been
subleased to said E. E. Brashear during the year 1920 by two
certain parties named Collins and Cathey, who were, in

turn, the lessees of a much larger tract of land, which embraced the above acreage, from the Turlock Irrigation District, the owner thereof. The sublease to E. E. Brashear provided that the latter should summer-fallow at least 300 acres of said subleased land each year and that in the event of his failure so to do his lease should become null and void. It was while he was the holder of said sublease that E. E. Brashear and his wife executed and delivered to the plaintiff the note and mortgage above mentioned, and which mortgage purported to cover two-thirds of the crops grown and to be grown upon said land. In July, 1920, said Collins and Cathey assigned their lease of the larger tract to one J. T. Denton, and upon the date thereof the irrigation district executed a new lease to Denton covering the same property for a lengthened term of years and at a reduced rental. Upon the same date Denton executed a new sublease to Brashear for the remainder of the term covered by his former lease and containing the same clause relative to summer-fallowing during the term thereof of 300 acres of the subleased land. During the spring of the year 1922 and while the defendant E. E. Brashear and his wife were in possession of the premises thus subleased he proceeded to summer-fallow approximately 400 acres of said land preparatory to planting the same with grain during the proper planting season of that or the following year. After having done so, and being apparently much involved financially, Brashear applied to the plaintiff for further credit; which application being rather coldly received Brashear concluded to surrender his sublease to his immediate landlord Denton and abandon the premises, and he accordingly on or about September 21, 1922, executed and caused to be recorded a formal surrender of said sublease to said Denton, and shortly thereafter Brashear and his wife abandoned said premises and went to live elsewhere. Thereupon said Denton went into possession of the premises thus surrendered and abandoned and subsequently thereto and on October 22, 1922, made and entered into an agreement with the defendant Huddleson, which agreement was in the form of a cropping lease covering about 360 acres of said 1,000-acre tract, wherein it was provided that said Huddleson was to plant and cultivate a crop or crops of grain upon said land which had thereto-

fore been summer-fallowed, and was upon the harvesting thereof to deliver to Denton one-fourth of the crops thus sown and harvested. Huddleson, under this agreement, went into the possession of said 360 acres of land and proceeded to plant, cultivate, and harvest a crop of grain thereon, while Denton proceeded to plant and harvest a crop of grain upon some 50 acres of said already summer-fallowed land of which he retained possession. In August, 1923, while the crops so seeded and cultivated by defendants Huddleson and Denton were in process of being harvested, the plaintiff herein commenced this action, making Brashear and his wife and also Denton and Huddleson defendants therein, seeking to foreclose its aforesaid crop mortgage upon the crops thus grown upon said land. A receiver was appointed in said action, who took possession of the crops and harvested and sold the same under order of said court and deposited the proceeds of such sale with the clerk of the court to await the outcome of said action. The case, when the issues were made up, was first brought to trial before a jury, but the trial court presently concluded that the action was equitable in its nature, and after discharging the jury proceeded to hear and determine the same. By its findings of fact and conclusions of law the trial court found and concluded that the plaintiff was entitled to judgment against E. E. Brashear and his wife upon their promissory note to it for the amount remaining due thereon, but that as to the crops and the proceeds thereof grown and harvested by Huddleson and Denton upon said premises the plaintiff was entitled to no relief. From the judgment which followed to the same effect the plaintiff has prosecuted the present appeal.

[1] The sole question presented to the court for consideration upon this appeal is as to whether or not the crop mortgage which had been given by the Brashears to the plaintiff had become so far effective upon the summer-fallowing work upon said premises which had been done by the Brashears in the spring of 1922 as to entitle the plaintiff to enforce its crop mortgage against the crops thereafter sown and grown upon said premises, when it appeared that the same had been sown and grown thereon after the surrender and abandonment of said premises and of his sublease thereof by said Brashear and when the

possession of said premises had been resumed by Denton and a new cropping agreement had been entered into as between himself and the defendant Huddleson, and when the latter, in pursuance thereof, had sown and grown the crops which were sought to be subjected to the lien of the plaintiff's said mortgage. It is the contention of the appellant that when the summer-fallowing of that portion of the said premises had been done by the Brashears a sufficiently decisive step had been taken in the direction of the planting and growing of the crop or crops of grain thereon as would suffice to entitle the plaintiff to assert the lien of its mortgage against such crops as were thereafter grown upon said summer-fallowed premises, even though the Brashears had surrendered the possession of said lands to their lessor, who had in turn executed a new cropping lease to the succeeding tenant Huddleson, by whom the crops sought to be subjected to said mortgage had been actually sown and grown. **[2]** We are unable to agree with this contention, for while it is true that a crop mortgage may be made to cover the crops thereafter to be sown and grown upon leased land, as was held by this court in the case of *Arques* v. *Wasson,* 51 Cal. 620 [21 Am. Rep. 718], and while it is true, as stated in that case, that such a mortgage has a potential existence during the period prior to the actual planting of the seed in said land upon which the crops to be subjected to said mortgage are to be grown, our attention has been called to no case, either in this or in any other jurisdiction, which goes so far as to hold that such a crop mortgage shall pass the point of such potential existence at any time prior to the actual planting with seed of said land. The rule applicable to this class of securities may seem to be an arbitrary one, but it has nevertheless been given universal application and has never, so far as we have been advised by the appellant or have investigated the authorities upon our own account, been extended to a case wherein the land, although plowed or summer-fallowed by the tenant, has passed, through his surrender of his lease back to his landlord or into the possession and control of others who have thereafter undertaken to plant and grow the crops thereon. The case of *Isbell* v. *Slette,* 52 Mont. 156

[155 Pac. 503], presents a practically identical situation to the case at bar. The Montana statutes relating to crop mortgages are similar to our own. The supreme court of Montana, after citing the case of *Arques* v. *Wasson, supra,* proceeded to hold that the crop mortgage in that case could not be held to attach to the crops planted and grown upon the leased premises after the lessee had parted with his possession and leasehold interest therein. A similar ruling was made by the supreme court of Minnesota in the case of *Simmons* v. *Anderson,* 44 Minn. 487 [47 Pac. 52], and a like holding was made by the supreme court of Iowa in the case of *Gammon* v. *Bull,* 86 Iowa, 754 [53 N. W. 340].

[3] The text-writers recognize and state the general rule to be that the holder of a crop mortgage has no interest in or lien upon the land, but that the lien of such mortgage attaches only to the interest which the mortgagor may have in the crops after they have come into being by the planting of the seed wherefrom they are grown (6 Cyc., p. 1048; 11 Cor. Jur., at p. 444), in which latter authority the foregoing cases from Montana and Minnesota are cited with approval.

[4] The appellant, however, further contends that the written and recorded surrender of his lease by Brashear was void for the reason that the writing evidencing such surrender was not signed by the wife of Brashear. The theory of the appellant in making this contention is apparently that the leasehold interest of said Brashear was community property which the husband could not transfer without the written consent of his wife. This contention has no merit for the reason that the lease of the premises. by Brashear was executed by himself alone, his wife not joining therein, and that the same amounted in law merely to a chattel real with which the husband had full power to deal. [5] But even were it otherwise, the undisputed evidence disclosed that after such written surrender of his said lease by Brashear, both he and his wife abandoned said leasehold premises and their immediate landlord accepted such surrender and abandonment and resumed possession of the premises. All interest of the Brashears therein was thus terminated, and with such termination all rights of their mortgagee as to crops not yet planted

upon the premises came to an end under the authorities above referred to. It follows necessarily that the plaintiff retained no interest whatever in the premises or in the crops thereafter to be sown and grown thereon, and the trial court was not, accordingly, in error in holding that the plaintiff had no lien upon the crops planted upon said premises by the defendants Denton and Huddleson, and hence no right to receive any portion of the proceeds thereof which had resulted from the harvesting and sale of said crops by the receiver and the deposit of the proceeds thereof with the court to abide the result of the judgment in said action.

No appeal having been prosecuted from said judgment by the defendants E. E. and Marie Brashear as to that portion thereof which bound them to the payment of their promissory note to the plaintiff, it follows that said judgment as to the respondents Denton and Huddleson should be and the same is hereby affirmed.

Shenk, J., Seawell, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.

Rehearing denied.