[L. A. No. 9982. In Bank.—June 19, 1929.]

RUTH CONGDON, Respondent, v. G. M. H. WAGNER & SONS (a Corporation), Appellant.

Ward Chapman and Hicox & Trude for Appellant.

C. L. Brown for Respondent.

RICHARDS, J.—This action was commenced by plaintiff to recover damages for an alleged conversion of a crop of grapes of which the defendant had taken possession and harvested and marketed under a claim of right so to do by virtue of the provisions of a chattel mortgage covering said personal property. The plaintiff recovered judgment for the damages which she sought by reason of such conversion. This appeal is upon the judgment-roll and the sole question thus presented is as to whether the findings support the conclusions of law and judgment of the trial court. The facts as disclosed by the findings are these: On August 15, 1923, and for some time prior thereto, two persons, whose names were D. Van Tol and J. Trainor, were the owners and tenants in common of a tract of land in Imperial County, containing approximately forty acres, and upon which or a portion thereof there was then growing a crop of grapes. Upon said date these owners of said land made, executed and delivered to the defendant in this action, a corporation, a chattel mortgage upon said growing crop of grapes as security for certain moneys advanced and to be advanced to said mortgagors and which were to be applied to the cultivation, irrigation, growing, harvesting and marketing of said grapes, the proceeds whereof were to be applied to the payment of said advancement. The mortgage by its terms

provided that it should also cover future crops of grapes to be grown upon said land through a series of years, to and including the year 1925, and further provided that in the event the indebtedness thus to be incurred was not repaid within a specified time the mortgagee would have a right to enter upon said premises and take possession of whatever of said crop was growing thereon and proceed to harvest the same, applying the proceeds thereof to the payment of said indebtedness. Said crop mortgage was found by the trial court to have been duly executed and duly recorded in the office of the county recorder of Imperial County and was in full force and effect from the date of its execution to and including a portion of the latter year. The trial court further found that prior to March 7, 1925, the owners of said property had caused the same and the title thereto to be registered under that certain initiative law known as the Torrens Land Title Law, or, perhaps more correctly, as defined in the title thereof, as the "Land Title Law" and which was adopted by the people at the general election on November 3, 1914, and which went into effect on December 19, 1914. (Stats. 1915, p. 1932.) The court further found that the aforesaid crop mortgage had not been registered under said Land Title Law and that the same and the record thereof had not been made to appear upon the certificates of title provided for under said law, but that the same was simply recorded in the record of chattel mortgages of the county of Imperial and so appeared upon the records of said county on March 7, 1925. The court further found that on March 7, 1925, the aforesaid owners of the land sold and transferred the same under and in accordance with the provisions of said Land Title Law to the plaintiff herein for a valuable consideration, and that at the time of the sale and transfer the plaintiff had no actual knowledge of the existence of said chattel mortgage, but took the land by virtue of the sale in good faith and in the ordinary course of business; that at the time of the purchase of the land by the plaintiff a crop of grapes was growing thereon which became ripe and ready for harvesting on or about July 1, 1925; that on said last-named date the former owners of the land were indebted to the defendant in a sum exceeding $7,000 and were in default in the payment thereof, and that thereupon the defendant entered upon the premises under the

terms and provisions of its crop mortgage and proceeded to
harvest and market said crop of grapes, receiving therefor
a net sum of $1,064.32, which sum it appropriated to its
own use. The plaintiff having expended the sum of $750
in the growth and care of said grapes in the belief that the
same was her property commenced this action against the
defendant for the recovery of damages for the alleged con-
version of said grapes. Upon the foregoing findings of fact
the trial court based its conclusion of law to the effect that
the plaintiff was entitled to recover judgment for such
damages, which conclusion was predicated upon the theory
that the plaintiff having purchased the premises under and
by virtue of the provisions of the Torrens Land Title Law
and that said crop mortgage not having been registered under
the provisions of said Torrens Land Title Law she took the
title to the premises and crops then growing thereon free
and clear of said chattel mortgage, and hence that the de-
fendant as the holder of the mortgage was not, after the
date of the plaintiff's purchase of the land, entitled to en-
force the same against the crop of grapes growing upon the
land at the time of her acquisition thereof. The trial court
gave its judgment in the plaintiff's favor, and from said
judgment the defendant prosecutes this appeal.

The Torrens Land Title Law upon which the respondent
relies to support the judgment is none other than that which
the official title to said act defines it to be nor than what
the body and substance of the act discloses it to be, namely,
a law which has relation to land titles and which provides
a method of its own for their registration and transfer. It
purports to provide a method by which the owner or owners
of an estate or interest in a particular tract of land may
bring the land and the title thereto under the operation of the
act by filing a verified petition in the superior court of the
county wherein the land is situated, setting forth the estate
or interest which the applicant has or claims therein, and
whether the same is community property or is subject to a
homestead, or to any easement, lien or encumbrance affecting
the title to the land, and, if so, the names and addresses of the
holders of such easement, lien, or encumbrance. Upon the
filing of the application in said court it shall cause to be
set in motion a procedure having for its object and purpose

the bringing before said court of all such persons as may have any interest in the title to said land or any particular estate or estates therein, including those who may be the holders of mortgages, easements, liens, attachments or other encumbrances, to which the said land or the owners of estates therein is subject. Having by the prescribed procedure brought all such persons before said court it shall proceed to a hearing and to the entry of a decree defining and certifying the title to such land and any lien or other charge affecting such title, which decree shall be in the nature of a decree *in rem* and shall forever quiet the title to said land and shall be final and conclusive as against the rights of all persons, known and unknown, to assert any estate, interest, claim, lien or demand of any kind or nature whatsoever against the said land. Upon the filing with the county recorder of a certified copy of said decree the latter shall, in his capacity of registrar as defined in said act, proceed to register the title in accordance with the directions of said decree and to issue a certificate or certificates of said title to the person or persons entitled thereto, which certificates shall set forth, in the order of their priority, "the particulars of all estates, mortgages, liens, encumbrances and charges to which the owner of the title is subject." The act proceeds to provide for the registration of all later transactions affecting the title to said land, and finally provides that "No unregistered estate, interest, power, right, claim, contract or trust, shall prevail against the title of a registered owner . . . or of any person *bona fide* claiming through or under him." The foregoing constitutes a sufficient epitome of the provisions of said Land Title Law to show that the act has relation to land titles only and to such transactions by way of mortgage, lease, contract to sell or other instrument intended to create such a lien, encumbrance or charge upon land as shall affect the title thereto. It has, however, been held consistently by this court that growing crops are personal property (*Marshall* v. *Ferguson,* 23 Cal. 65; *Davis* v. *McFarlane,* 37 Cal. 636 [99 Am. Dec. 340]), and that crop mortgages made, executed and recorded under the provisions of section 2955 et seq. of the Civil Code do not affect in any degree the title to the land upon which the crops covered by said crop mortgage are being grown and that the same do

not constitute a lien or charge upon the land. (*Simpson* v. *Ferguson,* 112 Cal. 180 [53 Am. St. Rep. 201, 40 Pac. 104, 44 Pac. 484]; *First Nat. Bank* v. *Brashear,* 200 Cal. 389 [253 Pac. 143].) It was also early decided by this court that a growing crop of fruit occupied the same relation to the land as a growing crop of grain, and as *fructus industriales* was personal property which might properly be subjected to a chattel mortgage. This being so, it would seem to be clear that such a crop mortgage does not come within the designations which are set forth in the aforesaid Land Title Law as constituting such a lien, encumbrance or charge upon the title to the land itself as would either require or permit its registration under the terms and provisions of said act, and hence that the purchaser of the title to said land would not be protected as against the operation and effect of a duly executed, duly recorded and existing chattel mortgage upon the growing crops upon such land as the purchaser thereof was acquiring title to under the terms and provisions of said Land Title Law. The holder of such crop mortgage, legally executed and duly recorded under the provisions of section 2955 et seq. of the Civil Code, has, by virtue of the provisions of said code, given constructive notice to all the world as to the existence of said crop mortgage and as to the priority of his lien in so far as it affects the crops growing or to be grown upon said land, and by such constructive notice all persons dealing with the owner or owners of said land during the period that the crops affected by said mortgage are growing thereon must be held to be bound thereby, notwithstanding the fact that the owner or owners of the land may have seen fit to take advantage of the so-called Torrens Land Title Law in order to facilitate a transfer or other transaction affecting the title to the land.

It follows that the trial court was in error in holding that the plaintiff as the purchaser of said land under the provisions of the so-called Torrens Land Title Law took the same free and clear of the encumbrance upon the crops being grown upon the land at the time of her acquisition of said title which were subject to the lien of the defendant's chattel mortgage thereon.

The judgment is reversed, with instructions to the trial court upon its findings of fact herein to make and enter

its conclusions of law and judgment in favor of the defendant in conformity with the views expressed in this opinion.

Curtis, J., Shenk, J., Preston, J., Waste, C. J., Langdon, J., and Seawell, J., concurred.