THOMAS J. McCOY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26410.    Promulgated December 12, 1950.

*Carroll Walker, Esq.*, for the petitioner.
*Marvin E. Hagen, Esq.*, for the respondent.

OPINION.

LeMire, *Judge:* Petitioner's contention is that where land is sold in the State of Kansas on which there is a growing and unmatured wheat crop, the growing crop is a part of the real estate and is therefore a capital asset within the meaning of the statute (sec. 117,

I. R. C.[1]).  He cites a number of cases, such as *Chapman* v. *Veach*, 32 Kan. 167, 4 Pac. 100; *Missouri Val. Land Co.* v. *Barwick*, 50 Kan. 57, 31 Pac. 685, and *Harrod* v. *Burke*, 76 Kan. 909, holding that under the law of the State of Kansas, as well as the general rule, immature crops are a part of the real estate on which they grow.

Assuming that the law as to property rights in Kansas is as stated by petitioner, it does not follow that a growing crop necessarily becomes a capital asset as that term is defined by the taxing statute. What is or is not a capital asset depends on the intent in Congress and not the laws of the different states.  In *United States* v. *Pelzer*, 312 U. S. 399, the Court said:

> * * * But as we have often had occasion to point out, the revenue laws are to be construed in the light of their general purpose to establish a nationwide scheme of taxation uniform in its application.  Hence their provisions are not to be taken as subject to state control or limitation unless the language or necessary implication of the section involved makes its application dependent on state law.  *Burnet* v. *Harmel*, 287 U. S. 103, 110; *Morgan* v. *Commissioner*, 309 U. S. 78, 81.

See also *Lyeth* v. *Hoey*, 305 U. S. 188.

In defining capital assets Congress has excluded property held for sale to customers in the ordinary course of business and property which would ordinarily be included in inventory at the close of the taxable year.

As we understand petitioner's position, he does not contend that a crop of wheat which had already been harvested and was ready for market would be a capital asset within the meaning of section 117.  He argues merely that the land itself is a capital asset and that the immature crop of wheat growing upon it cannot be regarded as a different kind of asset, separate from the land.

This position, we think, is untenable.  There is nothing in the statutory definition of capital assets that excludes a growing crop.  *Ernest A. Watson*, 15 T. C. 800.  Our question here is whether, as a matter of fact, the proceeds of the sale in question represented in part a consideration for the growing crop of wheat.  We must conclude on the evidence of record that they did.  The purchaser testified that in deciding upon the price which he would be willing to pay for the property, he considered the growing crop of wheat to be worth about $8,500.  That his estimate was conservative is shown by the fact

---

[1] SEC. 117.  CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

*       *       *       *       *       *       *

that he harvested and sold the wheat about six weeks later for over $12,200. He considered the land itself to be worth something over $30 per acre. Allowing $8,500 of the total purchase price against the growing crop would leave a value of $23,500, or approximately $36.50 per acre for the 640 acres of land with the improvements. To say that the petitioner did not consider the growing crop of wheat to have value separate from, although not to be immediately severed from, the land would give an unrealistic and impractical connotation to the transaction.

According to the evidence, the land had a fair market value of slightly more than $30 per acre. Petitioner could hardly have supposed that he was selling for $60 per acre the land which he had purchased for less than $30 per acre about a year previously, especially in view of the fact that there had been no substantial increase in the value of land in that locality over the intervening period.

The petitioner has devoted a considerable part of his evidence and his argument to the question of the fair market value of the crop of wheat at the time of the sale, as a separate and alternative issue. He contends that on the evidence of record the value to be ascribed to the growing wheat crop, if any, is not more than $5 per acre.

The fair market value of the wheat crop is pertinent only for the purpose of making an allocation of the sale price as between the land and the growing crop. There is no necessity for making any such allocation, however, if there was an actual purchase and sale of the wheat crop at a fixed price. We think that in the circumstances here we should accept the testimony of the purchaser that he, in fact, intended to pay, and did pay, $25 per acre for the wheat. That is not to say that we would be willing in every case to accept the purchaser's understanding of such a transaction as binding upon the seller. We are satisfied on the evidence as a whole in this case that the growing crop of wheat had a fair market value at the time of sale of as much as $25 per acre, and that the purchaser paid that amount for it. That left a price of more than $36 per acre for the land, with improvements, as compared with the price of approximately $29 per acre which petitioner paid for it in the preceding year.

We think that the respondent correctly determined the amount of the gain from the sale of the growing crop of wheat and that such gain constituted ordinary income.

Reviewed by the Court.

*Decision will be entered for the respondent.*

———

BLACK, *J.*, dissenting: For the same reasons stated in my dissenting opinion in *Ernest A. Watson*, 15 T. C. 800, I dissent from the majority opinion in the instant case.

I do not agree with the majority opinion wherein it holds that income realized by a wheat farmer on the sale of a farm on which there was a growing and unmatured crop of wheat is ordinary income and not capital gain to the extent that it represents payment for the growing crop. To my way of thinking, there is certainly nothing in the facts here to indicate that the taxpayer's growing and unmatured crop of wheat "was property held by the taxpayer *primarily* for sale to *customers* in the *ordinary* course of his trade or business." (Emphasis added.) It seems to me that the facts show that it was not so held. It is my view that if Congress wishes to exclude from the benefits of the capital gain provisions contained in section 117, I. R. C., the gain from the sale of a growing and unmatured wheat crop such as we have here and under the circumstances attending the sale, it will have to expand the exclusion provisions of section 117. That, of course, it may do if it wishes, but until Congress does so I think the entire gain from such transactions as we have here falls within the provisions of section 117 (j), I. R. C., and is taxable as long term capital gain.

HARRON, *J.*, agrees with this dissent.