## THE LEHMAN COMPANY OF AMERICA, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21839.   Promulgated September 26, 1951.

*P. McKinley Harris, Esq.,* for the petitioner.
*Ralph W. Harbert, Jr., Esq.,* for the respondent.

OPINION.

LEECH, *Judge:* The first two issues will be considered together. They involve the right of petitioner to allocate the proceeds of insurance received, as the result of a fire, between its capital and noncapital assets destroyed.

On its income and excess profits tax returns for the fiscal year ended January 31, 1947, petitioner claimed as an ordinary loss the amount of $96,823.34, with respect to the insurance received for its inventory loss, and reported a long term capital gain with respect to the depreciable assets such as buildings, machinery, and equipment in the sum of $97,342.38.

The respondent determined that petitioner had neither gain nor loss, since the basis for tax purposes of the capital and noncapital assets was in the same amount as the net insurance proceeds received.

It has been repeatedly held in similar cases that, where capital and noncapital assets are disposed of or converted for a lump sum, the gain or loss on each class of assets must be separately recognized for tax purposes if the basis therefor is established by the evidence. *Ernest A. Watson*, 15 T. C. 800 (on appeal C. A. 9) ; *Thomas J. McCoy*, 15 T. C. 828 (on appeal C. A. 10). Cf. *Battle Creek Food Co.* v. *Commissioner*, 181 F. 2d 537, affirming a Memorandum Opinion of the Tax Court (February 28, 1949).

The destruction of petitioner's property, as the result of a fire which occurred on November 24, 1946, was an involuntary conversion within the meaning of section 117 (j) of the Internal Revenue Code, as amended.[1] That section, in substance, provides that in case of an involuntary conversion of certain property used in a trade or business and held for more than 6 months, if the recognized gains exceed the recognized losses, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets. .

The buildings, machinery, and equipment of petitioner destroyed by fire were property of a depreciable character used in a trade or busi-

---

[1] Section 117 (j), I. R. C., in effect in the taxable year ended January 31, 1947, reads as follows :

SEC. 117. CAPITAL GAINS AND LOSSES.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(J) GAINS AND LOSSES FROM INVOLUNTARY CONVERSION AND FROM THE SALE OR EXCHANGE OF CERTAIN PROPERTY USED IN THE TRADE OR BUSINESS.—

(1) DEFINITION OF PROPERTY USED IN THE TRADE OR BUSINESS.—For the purposes of this subsection, the term "property used in the trade or business" means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable.

(2) GENERAL RULE.—If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, plus the recognized gains from the compulsory or involuntary conversion (as a result of destruction in whole or in part, theft or seizure, or an exercise of the power of requisition or condemnation or the threat or imminence thereof) of property used in the trade or business and capital assets held for more than 6 months into other property or money, exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. For the purposes of this paragraph :

(A) In determining under this paragraph whether gains exceed losses, the gains and losses described therein shall be included only if and to the extent taken into account in computing net income, except that subsections (b) and (d) shall not apply.

(B) Losses upon the destruction, in whole or in part, theft or seizure, or requisition or condemnation of property used in the trade or business or capital assets held for more than 6 months shall be considered losses from a compulsory or involuntary conversion.

ness, and constitute property subject to the treatment prescribed in section 117 of the code.

The remaining property destroyed was of a character includible in petitioner's inventory, which is property specifically excluded from the beneficial treatment provided by section 117 (j). Such property is a noncapital asset under section 117 (a) of the Code. Therefore, in determining gain or loss resulting from an involuntary conversion, capital and noncapital assets are to be separately treated.

We therefore consider what proportion of the insurance proceeds received is properly allocable to capital and noncapital assets.

The record shows that the three insurance adjusters authorized by the insurance companies to appraise the extent of the loss were required to and did separately determine the sound value of the various classes of property destroyed. Their report, as submitted to the companies, appraised the loss on the buildings at $268,047.51, the machinery and equipment at $360,271.19 and the stock in trade or inventory at $225,911.17, or a grand total of $854,229.87.

Petitioner received net insurance proceeds in the amount of $483,356.76. All the policies were general in character. None of the policies provided that a specific amount of insurance was applicable to the separate classes of property insured. The total insurance coverage of each policy was applicable to petitioner's property generally. While the payment of the proceeds was in a lump sum, the only reasonable basis for arriving at that sum was the application of the same percentage of loss to each class of property insured. There exists, therefore, a proper basis for allocating the net proceeds to each class of assets.

Since the value of the inventory destroyed was $225,911.17, the loss on the inventory was $225,911.17 divided by $854,229.87, or 26.44618 per cent of the total loss. This percentage applied to the net insurance proceeds received by petitioner results in a figure of $127,829.40 ($483,356.76 × .2644618) which is the amount of insurance proceeds allocable to the inventory. The stipulated base for tax purposes of the inventory is $224,127.32. Therefore the loss sustained with respect to the inventory is the difference between the amount of $127,829.40 of the insurance proceeds allocable to such inventory and the basis of $224,127.32, or the amount of $96,297.92. This loss, being sustained with respect to noncapital assets, constitutes an ordinary loss deductible in full under section 23 (f) of the Code. The remaining insurance proceeds received of $355,527.36 ($483,356.76 − $127,829.40) are the amount of insurance proceeds applicable to the capital assets destroyed. The basis for tax purposes of such capital assets is $259,229.44. Therefore the gain on these fixed assets is the sum of $96,297.92, or the difference between $355,527.36 and $259,229.44. Since the property

was held for more than 6 months, this recognized gain is to be treated as a long term capital gain under section 117 (j) of the Code.

The amounts we have determined as properly allocable between the capital and noncapital assets differ slightly from the amounts claimed by petitioner in its tax returns. Neither the testimony nor the brief of petitioner makes clear to us just how the amounts claimed were computed. On the basis of the evidence, we think our method of determining the amounts allocable to the separate properties is the correct one, and we have incorporated the resultant figures in our findings of fact.

The petitioner on its return claims the deduction under section 23 (a) in the amount of $519.04 in connection with the insurance recovery, and assigns error upon respondent's disallowance of this deduction. The action of respondent is approved, as this item has been reflected in our computation of the net amount of insurance recovered.

The third issue involves the question whether petitioner is entitled to deduct in its taxable year ended January 31, 1947, the amount of $2,349 representing a contribution to the Cannelton Flood Wall Fund. On brief the respondent concedes petitioner's right to such deduction. Therefore we sustain petitioner on this issue.

The final issue involves the question whether petitioner is entitled to an unused excess profits tax credit carry-back from the fiscal year ended January 31, 1947, to the fiscal year ended January 31, 1945.

The unused excess profits credit arises solely because of petitioner's allocation of the insurance proceeds to the separate classes of property destroyed. The respondent does not contend that petitioner would not be entitled to an unused excess profits tax credit if it is held that petitioner is entitled to allocate the insurance proceeds in such a way as to report a long term capital gain. Since we sustain petitioner's right so to allocate the insurance proceeds, we hold that petitioner is entitled to an excess profits tax credit carry-back to the fiscal year ended January 31, 1945. The amount of such credit will be determined in the recomputation under Rule 50.

*Decision will be entered under Rule 50.*