**COLE v. SMYTH, Collector of Internal Revenue (two cases).**

Nos. 29470, 29471.

United States District Court
N. D. California, S. D.
April 10, 1951.

Sherwood & Lewis, San Francisco, Cal., for plaintiffs.

Frank J. Hennessy, U. S. Atty., Macklin Fleming, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HARRIS, District Judge.

Plaintiff, formerly the owner of two Valencia orange groves which he sold January 3, 1944, seeks to recover taxes paid defendant in connection with the sale of said

groves. It is plaintiff's contention that the entire price realized constitutes income attributable to the capital structure. Defendant ruled that of the $25,000 realized by plaintiff, $7,356.75 was chargeable to the Valencia oranges then growing on the trees and that such money must be treated as ordinary income as opposed to the gain from the sale of the land and trees which constitutes capital gain under the provisions of 26 U.S.C.A. § 117(j) (1) and (2).[1]

The evidence establishes the fact that Valencia oranges blossom in April and May and set in June of each year. They thereupon mature slowly and are not ripe until May of the following year. Such growth is contrasted to that of navels which bud and set at the same time that Valencias do, but contain proper color and sugar content to permit their sale under state and federal law in November of the same year. Oranges may be sold and shipped in interstate commerce when they show a ratio of eight parts of sugar to one of acid.

Among the various hazards which an orchardist must withstand while bringing his fruit to maturity is that of frost. From late December through February the orange crop is vulnerable to frost damage. The history of the Tulare valley, where plaintiff owned his orchards, discloses heavy losses during two years out of ten and somewhat lighter losses during four years of the same period.

Navel oranges are less likely to suffer from frost damage than Valencias for two reasons: Most of them are picked or may be picked before the regular frost season; mature oranges with high sugar content can withstand lower temperatures than immature oranges.

Valencia oranges, which are slow-growing fruit, are generally green and undeveloped on January 3rd of an average year at which time there is no market for the undeveloped fruit. They contain almost no juice and their insides consist of a white pulp. At the same time there is extreme danger of frost loss for two months despite the development of such devices as wind machines and smudge pots for combating frost.

At the conclusion of the frost season, irrigation is necessary in order to bring the crop to maturity. Irrigation generally starts in March unless the region has enjoyed a particularly damp season. The evidence in the case indicates that frost prevention and irrigation together require the expenditure of at least 50% of the cost of bringing the crop to maturity.

When the orange crop is ripe and ready for picking, it is not removed from the trees at once. Under the pro-rate system set up by the United States Department of Agriculture, oranges are allocated for shipment from the State of California and Arizona. Through this system the market is kept on an even keel throughout the maturity season and a flood of oranges is avoided. In Tulare County, where plaintiff owned his orchards, almost all growers operate through co-operatives or independent packing houses on a commission basis. The few oranges which are sold on the trees are mature fruit.

The somewhat detailed factual background pertaining to the development of oranges is necessary because of two rulings:

1. 26 U.S.C.A. § 117 (j) (1):
"Gains and losses from involuntary conversion and from the sale or exchange of certain property used in the trade or business.
"(1) Definition of property used in the trade or business. For the purposes of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not
"(A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or
"(B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Such term also includes timber with respect to which subsection (k) (1) or (2) is applicable."

In the case of Irrgang v. Fahs, D.C., 94 F.Supp. 206, Judge Barker of the District Court of Florida held that the sale of orange grove property, including the growing fruit, was the sale of real property used in the taxpayer's trade or business which met all the requirements of Section 117(j) of the Internal Revenue Code, 26 U.S.C.A. § 117(j), and that no allocation of selling price between the value of the crop and that of the land and trees was proper. In contrast to the decision of the Florida District Court, a majority of the Tax Court of the United States in the case of Ernest A. and Gladys M. Watson, 15 T.C. ——, decided December 7, 1950, held that whether or not the growing crop of oranges was real property used in the taxpayer's trade or business, the crop itself constituted property held primarily for sale to customers in the ordinary course of trade or business and that gain realized from the sale of such property was not capital gain.

It is the considered opinion of this Court that the reasoning in the Irrgang case is applicable under the particular facts herein, and that plaintiff is entitled to recover from defendant. The facts in the Watson case are distinguishable and the holding by the Court is inapposite.

A brief summary of the facts before the Tax Court establishes the basis for the majority ruling in that decision. Taxpayer sold a *navel* orange grove in September 1944. He obtained $197,100 for the property. The buyer estimated a net return on the oranges for the particluar season of $120,000. The oranges were within two months of being fully mature at the time of purchase. Hazards between date of purchase and date of maturity were minimal. Actually, the buyer realized $126,000 on the oranges. The Tax Court concluded that the purchaser of the California grove was buying land, trees and a crop in being of clearly measurable value. The majority of the Tax Court believed that the oranges in question constituted property held by the taxpayer primarily for sale in the ordinary course of his trade or business.

Even if it be granted that a mature, or near mature crop, be deemed property held by taxpayer primarily for sale in the ordinary course of his trade or business within the meaning of the applicable statute, the Valencia oranges in the case at bar were not of such a nature as to constitute such property at the time plaintiff sold his orange grove. The testimony in the case disclosed that there was no market for such a crop and that no lending institution would consider making a loan on the oranges in their undeveloped state on January 3, 1944. Under these circumstances plaintiff is entitled to the benefit of the capital gains provisions of Section 117(j) of the Internal Revenue Code, 26, U.S.C.A. § 117(j).

Accordingly, it is held that the entire gain from the sale of plaintiff's two orchards was a gain from the sale of a capital asset held for more than six months and such gain may not be pro-rated between the land, the trees and the immature fruit in being at the time of the sale. Plaintiff is to prepare findings of fact and conclusions of law in accordance with this opinion.