James G. SMYTH, Collector of Internal Revenue, Appellant,

v.

George G. COLE and Myrtle N. Cole, Appellees.

No. 13080.

United States Court of Appeals, Ninth Circuit.

Jan. 19, 1955.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Hilbert P. Zarky, George

---

1. Now 8 U.S.C.A. § 1182.

F. Lynch, Sp. Assts. to Atty. Gen., Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellant.

Clyde C. Sherwood, John V. Lewis, M. L. Lieberman, San Francisco, Cal., for appellees.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellees are husband and wife whose only income was community income which was reported on a community and calendar year cash basis. The tax year here involved was 1944, and each taxpayer filed a separate return for that year.

Appellees owned two parcels of California land used for the purpose of growing oranges. On January 3, 1944, they conveyed both parcels (called orange groves) to their son. The consideration (stated in what appears to have been a separate "agreement") was $25,000 for both "groves," $12,500 being allocated to each. Possession passed to the son on this date. At the time of this sale, a crop of green Valencia oranges was growing on fruit trees. They were harvested in the following May and sold for $33,248.14.

The income taxes here in dispute were paid on April 23, 1948, and this appeal grew out of a suit resulting from a rejection by the Commissioner of claims for refund timely filed by each taxpayer. The lower court agreed with taxpayers in their suit for a refund of the taxes *paid by each* amounting to $2,758.78 with interest thereon amounting to $474.87, and entered judgment in favor of each. The taxes here specifically involved arose out of a deficiency assessment resting on an "appraisement" and determination of the Commissioner. In this "determination" he asserted that the total value of the two groves (land and trees) had been appraised by him as $43,123.50 (they having sold for $25,000 to the son), and he also "valued" the crop of green oranges then on the trees at an *additional* $7,356.75, making a total "appraisement" for the land, trees *and* orange crop of $50,480.25.

The Commissioner then "determined" that there was a "gift" to the son of the *difference* between the selling price ($25,000) and his appraised price ($50,-480.25) to wit, a "gift" of $25,480.25. On the face of this sort of allocation, appraisement and determination, it might appear that the Commissioner was holding that the son had received a "gift" from the parents amounting to $25,-480.25. But the record makes abundantly plain that the Commissioner proceeded to *include* in the ordinary income of appellees-taxpayers the sum of $7,-356.75, which he claims these taxpayers "realized" as "ordinary income" from the "sale" of the oranges growing on the trees when the land was sold to the son, hence it seems clear that whatever the "gift tax" (if any) arising out of the sale of the land and trees to the son, it did not include, and was not imposed upon, a greater sum than one-half of $43,123.50, or upon a "gift" of $21,-561.75. For the reasons here noted [1] the matter of the gift tax is out of this case, and the controversy is confined to the issue of the income tax imposed on the claimed income of $7,356.75.

The instant case therefore has to do solely with appellees' claim for refund of income taxes they paid on the basis of "ordinary income" to the community amounting to $7,356.75.

In this connection, appellees concede that (under the doctrine of Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 852, 97 L.Ed. 1232) the tax on the crop, if any, should have been based up-

1. The question of a "gift tax" appears in this case only indirectly but deserves some notice. The record on appeal is silent as to whether or not appellees actually paid a gift tax on one-half of the "value" assigned by the Commissioner *to the land and trees* transferred to the son, this on the theory that *such a value* represented a gift and as such was subject to federal gift tax. In any event all parties agree that the issue of such a gift tax is not here involved.

on, and attributable to, its "market value" on the date of sale to the son. Appellees appear to agree that the Watson case requires an *allocation* of the sellers' "gain" arising from the sale of an "unmatured" crop, this wholly apart from the value of the land and trees. They concede that in the Watson case the court held that regardless of its stage of development, the unharvested and unmatured crop constitutes "property held by the taxpayer primarily for sale to customers in the ordinary course of the taxpayer's trade or business."

The crux of appellees' argument is that the green and unmatured oranges then on the trees simply had no "market value" on January 3, 1944, hence no part of the selling price of the land to the son could have been attributed or "allocated" to the crop. They assert that the real and only "value" involved in the sale to the son was represented by the land and trees which concededly qualify as real property used in appellees' trade or business within the meaning of Section 117(j) of the Internal Revenue Code, 26 U.S.C.A. This view is reflected in a contention of their counsel at trial that "you cannot hold green oranges for sale, and plaintiffs [appellees] do not sell green oranges; it isn't in the ordinary course of business to sell green oranges." And further, "nobody sells green oranges nowadays in the ordinary course of their business * * it would be an extraordinary thing indeed * * * the statute [2] says *primarily held for sale.*" (Emphasis ours.)

**2.** Section 117 of Title 26 U.S.C.A.

**3.** The only finding of fact touching the question of the value of the crop of green oranges on the trees at the date of the sale reads as follows:

"13. The Valencia oranges growing as aforesaid on the trees of plaintiffs' groves on the date of sale, to wit, on January 3, 1944, were small and green, having a low sugar and juice content. The said Valencia oranges were subject to a serious risk of being destroyed through frost damage in the months following the date of sale and it was not feasible on said date of sale to estimate what the production of the groves for the year would be. No

### The Findings and Conclusions

The lower court made no specific finding on the question of the *value* of the growing and unmatured orange crop as of the date of the sale to the son.[3] It is obvious from the record that it regarded the land value (including the trees) as *including* the value of the green oranges then on the trees. As we have noted, it did find (footnote 3) as a fact that as of the date of the sale the growing Valencia oranges were small and green; that they were subject to serious risk of frost damage in the following months; that "it was not feasible" on January 3rd to estimate what the production of the two groves would be in 1944; that on the sale date, "no market existed" for the crop of growing oranges; that during the calendar year 1944, there were no known cash sales of orange crops "prior to maturity" in the County where the groves were located. (See footnote 3 referring to the absence of a specific finding on the question of value of the growing crop.)

The court also found that in their respective income tax returns for the taxable year taxpayers-appellees treated the entire amount of $25,000 as proceeds of a capital asset held more than six months and they computed and paid their taxes on this basis. It also found that in reviewing their tax returns, the Commissioner had allocated a portion of the amount paid by the son for the two parcels of land, to wit, the total sum of $7,356.75, to the unmatured crop of Valencia oranges existing on the date of the

market existed for the said crops of Valencia oranges growing on the groves sold by plaintiffs on the aforesaid date of sale."

Certainly a finding that "it was not feasible on said date to estimate what the production of the groves for that year," is not a finding of "market value" or of "value" measured by any other standard. As we note in the body of the opinion, *appellant* contends that appellees were required to "allocate" (at least) *some value* to the growing crop, and we agree that the court should have made a specific finding on the question of the value or absence of value, of the growing crop.

sale, and caused one-half of this allocated sum to be taxed as ordinary income to each of appellees-taxpayers.

The court further found that based on *this allocation* there was a deficiency in income taxes of each of these taxpayers for 1944 in the sum of $2,758.78, and that each of these taxpayers paid the sums so assessed (on April 23, 1948) along with interest thereon in the amount of $474.87.

Based on the findings above outlined, the court concluded, inter alia, that the entire amount of $25,000 realized by the taxpayers-appellees on their sale of the two orange groves resulted from the sale of real property used in their trade or business and constituted proceeds from the sale of a capital asset held for more than six months prior to the date of sale, under Section 117(j), Internal Revenue Code. Judgment went accordingly.

Appellant says that the substance of its contentions here is that the lower court erred in taxing as capital gain the portion of the gain ($7,356.75) realized by appellees "which was attributable to the existing crop of fruit." It urges that the holding in Watson v. Commissioner, supra, requires a reversal and a remand of the consolidated cases for further proceedings "to determine what portion of the gain, if any, was attributable to the existing crop of fruit" on January 3, 1944.

The vigorous contention of appellant regarding the necessity of *a judicial apportionment of gain* inuring to appellees, *if any*, from that part of the sale proceeds represented by the claimed value of the growing crop, leads us to the conclusion that appellant's demand has merit. As we have indicated, the lower court made no finding on the question of the *value* of the orange crop on the date of the sale. At the time of the trial the Watson case had not been decided by the Supreme Court and the trial judge was deprived of the guidance which the Watson case would have provided.

Appellant emphasizes in its brief that while the court did make a finding that "no market existed for the said crop of Valencia oranges growing on the groves sold by [the taxpayers] on the aforesaid date of sale" it further argues that, nonetheless, "the fact that there was no market for the fruit, if attempted to be sold alone, while still growing on the trees, is not at all inconsistent with the self-evident proposition that there was a market for the grove property, *including the growing fruit*, and that on a sale of the entire property *some value* would be attributable to the growing fruit." [4] It is clearly the position of appellant that whatever the "value" (in this sense) of the unmatured oranges, that *value*, "if any," should be found as a fact by the trial court.[5]

4. Appellant concedes the presence in the trial record of testimony to the effect that on a sale of the entire property no value *could* be attributed (on the sale date) to the growing fruit. Appellant correctly points out that the court made no finding to that effect. Stress is also given the fact that the "weight, credibility and persuasive effect of that [value] testimony, in the light of conflicting testimony, is obviously a matter for the lower court, and on that [issue of value] it has not yet drawn any conclusion."

Appellant's ultimate argument for remand is that the "manner" of deciding the case below resulted in the lower court failing to make any *factual determination* whether the Commissioner was correct in allocating $7,356.75 as a *portion* of the gain attributable to the *value* of the crop,

*or* whether "some lesser amount, if any at all" was so allocable. The point urged is that the court should have decided whether the Commissioner was wrong in allocating the value he determined to the growing crop, or whether appellees succeeded in proving that "some lesser value or no value at all" should be so allocated. It is argued, (and we agree) that these questions presented factual matters to be determined by the trial court, and call for appropriate findings.

5. This is the same sort of value as that to which the Supreme Court referred in Watson v. Commissioner, 345 U.S. at page 551, 73 S.Ct. at page 852, when it spoke of "the value fairly attributable to the presence of the crop in August and September, 1944".

On the record made in the lower court, that court may readily supplement the record in the respects here noted; that is to say, it may and should make an additional finding (or findings), and conclusions, respecting the value, or lack of value, of the crop on the sale date, and therein indicate whether "some value" could or should be attributable to the growing fruit.

And in this connection, we add that we agree with appellees that the question of "value" of the orange crop on January 3, 1944, is a question of fact properly to be decided by the trial court. In this view we also find ourselves in agreement with the conclusion expressed by appellant.

At this juncture (and in light of appellant's contentions, and the present posture of the case) we need not burden this opinion with an analysis of the holdings in cases cited by the parties. The judgment is reversed and the cause remanded for further proceedings in the light of this opinion.

POPE, Circuit Judge (concurring).

I concur in Judge BONE'S opinion as I am agreed that the case is governed by the decision in Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 852, 97 L.Ed. 1232, of which the trial court did not have the benefit when he made his findings. I have but one reservation in this concurrence and that is based upon my belief that no court could reasonably say that the presence of the crop on January 3, 1944, did not add *some value* to the purchase price. The fact that this crop was more immature than that in the Watson case shows a difference in degree but not in kind. Its ultimate maturity is subject to more hazards but I think that, to paraphrase the language of the Supreme Court, "It is obvious that the parties to this sale did in fact attribute [some] value to the unmatured crop." What that value was is manifestly not susceptible of exact proof; in the Watson case the Commissioner said $122,500 and the Tax Court said $40,000. Judge BONE'S opinion seems to emphasize the words "if any". Like farmers generally, persons in the orchard business live perpetually with the chances of frost, pests and similar hazards, and know how to evaluate them. I cannot think that any one could believe that one who bought an orchard with a crop halfway to maturity would attribute no value to the crop.

HEALY, Circuit Judge (dissenting).

In substance and effect the trial court found that there was no basis in fact for ascribing any value to the growing oranges at the time the orchard was sold. This ought to be enough, unless we desire to have the court go through the idle ceremony of finding a nominal value. I would affirm for the reasons given in the opinion below, 96 F.Supp. 745.